[No. 62420-8.  En Banc.  August 10, 1995.]

HANS J. BOHME, ET AL., *Respondents*, v. PEMCO MUTUAL INSURANCE COMPANY, *Appellant*.

410

*Merrick, Hofstedt & Lindsey* by *Ronald S. Dinning*, for appellant.

*Albertson Law Offices* by *Dan M. Albertson*, for respondents.

MADSEN, J. — At issue in this case is whether language in an insurance policy excluding government-owned vehicles from the definition of "underinsured motor vehicle" where the governmental entity has sufficient financial resources to pay the insured's claim violates the language or the purpose of Washington's underinsured motorist statute, RCW 48.22.030(1). Applying this court's test in *Kyrkos v. State Farm Mut. Ins. Co.*, 121 Wn.2d 669, 852 P.2d 1078 (1993), we conclude it does not.

## FACTS

On February 17, 1994, Hans Bohme's automobile was

struck by a motor vehicle while Bohme was driving on the Maple Valley highway. The vehicle that struck Bohme was owned by King County and operated by a King County employee in the scope and course of his employment. Bohme was injured and sought medical care because of the accident.

On the date of the accident, Bohme's car was insured by PEMCO Auto Policy No. CA 0441112. Hans Bohme and his wife submitted a claim for underinsured motorist (UIM) coverage against the PEMCO policy for damages arising out of the accident. PEMCO denied coverage based on the following language in its policy:

> An underinsured motor vehicle is not:
>
> > One owned by any governmental entity, including its subdivisions or agencies; or operated by an employee or agent of any governmental entity, including its subdivisions or agencies, while in the course of employment. *This exclusion will not apply if the governmental entity is unable to satisfy a claim because of financial inability or insolvency.*

(Emphasis added.) Clerk's Papers, at 39, 45. The Bohmes disagreed with PEMCO's coverage denial and filed a declaratory judgment action seeking coverage under the PEMCO policy and attorney fees.

Both parties subsequently moved for summary judgment. They agreed for purposes of these motions that (1) King County is not insolvent and has sufficient assets to satisfy the Bohmes' claims arising out of the February 1994 accident, and (2) King County does not have a liability insurance policy or bond applicable to the Bohmes' claims arising out of the accident.

The trial court granted the Bohmes' motion for summary judgment, denied PEMCO's summary judgment motion, and entered an order declaring that the PEMCO policy provides UIM coverage to the Bohmes for claims arising out of the accident and also awarding the Bohmes attorney fees. PEMCO then sought direct review of this

decision, which this court granted pursuant to RAP 4.2(a)(4).

The principal issue is whether language in an insurance policy which excludes government-owned vehicles from the definition of underinsured motor vehicles when the governmental entity concerned is financially solvent is valid and enforceable under this state's underinsured motorist statute. No other court appears to have considered the validity of a government-owned vehicle exclusion with an insolvency exception attached. Hence, this is a case of first impression.

Both parties agree, however, that guidance in resolving this issue is provided by *Kyrkos*. In *Kyrkos*, this court considered the validity of policy language that excluded government-owned vehicles from the definition of underinsured motor vehicles. Unlike the exclusion at issue here, the exclusion in *Kyrkos* contained no reference to the financial resources of the governmental entity concerned. *Kyrkos*, at 672. The court observed initially that cases dealing with UIM coverage exclusions fall into two categories: those where the exclusion is directly contrary to specific language in the UIM statute, and those where an exclusion is neither permitted nor foreclosed by the UIM statute. *Kyrkos*, at 673. When language in the policy explicitly conflicts with the statute, that language must be stricken. Where there is no such express conflict, an exclusion is permitted if it comports with the declared public policies of the UIM statutory scheme. *Kyrkos*, at 673. The court thus established a two-part test for examining the validity of UIM exclusions: Does the proposed exclusion conflict with the express language of the UIM statute? If not, is the exclusion contrary to the UIM statute's declared public policy? An exclusion will be sustained only where both inquiries can be answered in the negative. *Kyrkos*, at 674.

The statutory definition of an underinsured motor vehicle is set forth in RCW 48.22.030(1):

> "Underinsured motor vehicle" means a motor vehicle with

respect to the ownership, maintenance, or use of which either no bodily injury or property damage liability bond or insurance policy applies at the time of an accident, or with respect to which the sum of the limits of liability under all bodily injury or property damage liability bonds and insurance policies applicable to a covered person after an accident is less than the applicable damages which the covered person is legally entitled to recover.

The Bohmes argue that the King County vehicle that struck their car clearly fits the statutory definition of an underinsured motor vehicle, as no liability bond or insurance policy applied to the vehicle at the time of the accident. They also claim that the absence of any reference to financial solvency in RCW 48.22.030(1) renders solvency irrelevant where UIM coverage is concerned. They note further that the statutory definition makes no distinction between governmental and nongovernmental entities. While it is true that the statute does not refer to financial resources or to governmental entities, the question is whether the language of the exclusion at issue expressly *conflicts* with the language in the UIM statute. We found no language in the UIM statute that specifically foreclosed the government-owned vehicle exclusion at issue in *Kyrkos*, and have been offered no compelling reason to reach a different conclusion with regard to the government-owned vehicle exclusion in this case.

We thus turn to the second part of the Kyrkos test; that is, whether the exclusion at issue conflicts with the public policy behind the UIM statute. PEMCO maintains that the purpose of UIM coverage is to assure compensation for victims of financially irresponsible victims. The Bohmes do not disagree with this statement, but insist that the real issue is whether the responsible party maintained adequate liability insurance, not the tortfeasor's ability to pay.

Although the UIM statute does not contain a legislative intent section, this court has consistently held that the statute " 'is to be liberally construed in order to provide broad protection against financially irresponsible

motorists' ". Dennis A. Dellwo & John S. Conniff, *The Washington Underinsured Motor Vehicle Insurance Statute: Reading the Legislature's Mind*, 23 Gonzaga L. Rev. 235, 237 (1987-1988) (quoting *Britton v. Safeco Ins. Co.*, 104 Wn.2d 518, 523, 707 P.2d 125 (1985)). The *Kyrkos* court explained the purposes of the UIM statute more fully:

> [The uninsured motorist statute] is but one of many regulatory measures designed to protect the public from the ravages of the negligent and reckless driver. . . . The statute is both a public safety and a financial security measure. Recognizing the inevitable drain upon the public treasury through accidents caused by insolvent motor vehicle drivers who will not or cannot provide financial recompense for those whom they have negligently injured, and contemplating the correlated financial distress following in the wake of automobile accidents and the financial loss suffered personally by the people of this state, the legislature for many sound reasons and in the exercise of the police power took this action to increase and broaden generally the public's protection against automobile accidents.

*Kyrkos*, at 675 (quoting *Mutual of Enumclaw Ins. Co. v. Wiscomb*, 97 Wn.2d 203, 208, 643 P.2d 441 (1982)).

The emphasis of these statements of purpose is on financial recompense and indemnification. We agree with PEMCO that its government-vehicle exclusion acknowledges this emphasis, as it denies UIM coverage only where the government entity has the financial resources to compensate the accident victim.

We also find that the PEMCO policy is consistent with another purpose of UIM coverage. This court has stated that an additional purpose of such insurance is to provide the insured with a second layer of protection which "floats" on the top of recovery from other sources. *See Brown v. Snohomish County Physicians Corp.*, 120 Wn.2d 747, 757, 845 P.2d 334 (1993); *Blackburn v. Safeco Ins. Co.*, 115 Wn.2d 82, 87, 794 P.2d 1259 (1990); *Tissell v. Liberty Mut. Ins. Co.*, 115 Wn.2d 107, 120, 795 P.2d 126 (1990) (Callow, C.J., concurring). "[T]he legislative purpose behind the UIM statute is to ensure the availability of

this added source of recovery . . . . UIM coverage is a second layer of coverage for the injured party". *Blackburn*, at 87. In *Tissell*, a majority of the court was critical of an opinion that translated the purpose of UIM coverage from assuring a dual layer of recovery into ensuring full compensation for accident victims. *Tissell*, at 120 (Callow, C.J., concurring). We see no reason to conclude that the Legislature intended that UIM coverage should act as a primary source of recovery with respect to claims against governmental entities that have adequate financial resources. This is what the trial court's order accomplished, in effect, and we find that such a result distorts the purpose of UIM coverage as a safety net or secondary source of protection.

The Bohmes acknowledge this case law, but insist that the purpose of UIM coverage is not to guarantee compensation whenever damages are caused by an insolvent tortfeasor. According to the Bohmes, insolvency is irrelevant; the only issue is whether the responsible party was insured. *See Finney v. Farmers Ins. Co.*, 92 Wn.2d 748, 751, 600 P.2d 1272 (1979) (purpose of UIM statute to allow an injured party to recover damages received had the responsible party maintained liability insurance). The Bohmes cite *Kyrkos* as additional support for this position and for the resulting conclusion that the PEMCO exclusion is invalid.

In *Kyrkos*, State Farm contended that its government-owned vehicle exclusion comported with the UIM statute's declared public policies. More specifically, it argued that the City of Seattle, owner of the vehicle at fault, was capable of paying any losses that might arise from an employee's negligence. The court observed that while this argument might be persuasive as applied to Seattle, there was nothing to indicate that governmental entities in general possess similar resources. Smaller governmental bodies would be hard pressed to satisfy a judgment arising from a serious accident. "In order to ensure certain financial compensation, the UIM statute does not operate

on a case-by-case basis". *Kyrkos*, at 676. The court also cited with approval language from a Maine opinion that invalidated a similar exclusion: "It is critical to note . . . that the Legislature mandated coverage for all uninsured motorists, without differentiating between the financially responsible and the financially irresponsible. . .". *Young v. Greater Portland Transit Dist.*, 535 A.2d 417, 420 (Me. 1987), *cited in Kyrkos*, at 676. The *Kyrkos* court then concluded that "[t]he mere fact that a tortfeasor is a government entity does not guarantee its ability to compensate accident victims. *As a result*, we hold that the government-owned vehicle exclusion violates the UIM statute by decreasing coverage beyond the statutory minimum". (Emphasis added.) *Kyrkos*, at 676.

The Bohmes argue that the PEMCO exclusion requires the UIM statute to operate on a case-by-case basis in violation of *Kyrkos*. It is true that the PEMCO exclusion does require consideration of a government entity's financial resources whenever that entity is at fault. However, other cases have found an insured's right to collect UIM coverage dependent on the particular facts at hand. *See Roller v. Stonewall Ins. Co.*, 115 Wn.2d 679, 801 P.2d 207 (1990) (UIM coverage depended on whether claimant was using insured vehicle at time of accident and whether act of tortfeasor was in fact an accident); *State Farm Mut. Auto. Ins. Co. v. Johnson*, 72 Wn. App. 580, 871 P.2d 1066 (UIM coverage depended on whether claimant was household resident), *review denied*, 124 Wn.2d 1018 (1994). While the Bohmes also point to problems that might arise in determining solvency, including when and how the ability to pay is to be ascertained, we note that such problems are not at issue here since the parties have stipulated that King County has sufficient resources to pay the Bohmes' claims. Moreover, we agree with PEMCO that an insurance exclusion is not invalid because it fails to provide for every possible contingency. More importantly, however, PEMCO correctly asserts that only the existence of coverage, not the insured's right of compensation, is case-by-case dependent under the PEMCO policy language.

■ The problem with the government-owned vehicle exclusion in *Kyrkos* was that it failed to ensure the tortfeasor's ability to compensate. The PEMCO exclusion does not make the same mistake. This exclusion from UIM coverage applies only if the governmental entity is solvent, and thus able to compensate the victim. The PEMCO exclusion plainly states that it "will not apply if the governmental entity is unable to satisfy a claim because of financial inability or insolvency". Clerk's Papers, at 45. Thus, the PEMCO language directly satisfies the concern in *Kyrkos* that an insured not bear the risk of being uncompensated by an insolvent governmental entity.

The Bohmes correctly assert that this court has disapproved of exclusions that attempt to limit the protection afforded by the UIM statute, and, in so doing, has stated that UIM coverage is not to be " 'whittled away by a myriad of legal niceties arising from exclusionary clauses' ". *Kenworthy v. Pennsylvania Gen. Ins. Co.*, 113 Wn.2d 309, 313, 779 P.2d 257 (1989) (quoting *Touchette v. Northwestern Mut. Ins. Co.*, 80 Wn.2d 327, 335, 494 P.2d 479 (1972)); *see also Finney*, at 752. This court also has stated, however, that while limitations in insurance contracts which are contrary to public policy and statute will not be enforced, insurers otherwise are permitted to limit their contractual liability. *State Farm Gen. Ins. Co. v. Emerson*, 102 Wn.2d 477, 481, 687 P.2d 1139 (1984); *Wiscomb*, at 210. "While questioning the wisdom of certain exclusion clauses, we have been hesitant to invoke public policy to limit or avoid express contract terms absent legislative action". *Emerson*, at 481; *Progressive Casualty Ins. Co. v. Jester*, 102 Wn.2d 78, 82, 683 P.2d 180 (1984).

As noted earlier, the parties cite no cases, and we are aware of none, which have addressed the validity of a government-owned vehicle exclusion with an insolvency exception. Several treatises, however, support the conclusion that the PEMCO exclusion is a logical and legitimate limitation on UIM coverage. In discussing coverage limitations for uninsured government-owned highway vehicles, Professor Alan Widiss writes that an exclusion from UIM

coverage for such vehicles is reasonable when it applies to governmental units that are solvent and provide a source of indemnification. 1 Alan I. Widiss, *Uninsured and Underinsured Motorist Law* § 8.8, at 348 (1990).

> However, not all political subdivisions are solvent—as demonstrated by the financial problems of several school systems. Similarly, small towns and villages, while falling within the excluded class, often do not, in fact provide a readily available source of indemnification for serious injuries.
>
> . . . .
>
> A better approach to the question of coverage for government-owned vehicles would be to alter the coverage terms to provide insurance in accidents with vehicles owned by government bodies when indemnification is unavailable because the governmental body is immune from suit, because the government's liability is limited, or because the governmental body does not possess adequate resources.

*Widiss*, at 348, 352. Other treatises agree that an exclusion for government-owned vehicles that considers the financial well-being of the governmental entity concerned may have validity. One authority examined relevant case law and found a case that upheld a government-owned vehicle exclusion more reasonable than the authority to the contrary:

> If we go back to the statutory purpose examined earlier, it was to protect persons of the designated classes from economic loss resulting from injuries inflicted by financially irresponsible motorists. Unless we consider that the governments in question have indulged in fiscal policies so irresponsible as to be unable to satisfy claims made against them, they would not seem to be the type of entities contemplated by the law. While it may require a slightly different procedure to enforce such claims, since doctrines of governmental immunity have largely been abandoned, the victim is much better off than if confronted by a motorist carrying the bare minimum of coverage necessary to qualify under various financial responsibility laws.

8C John A. Appleman, *Insurance Law and Practice* § 5080.65, at 276 (1981); *see also* 1 Paul A. Eisler, *Califor-*

*nia Uninsured Motorist Law* § 10.40, at 10-9 (1986) (government-owned vehicle exclusion does not violate the remedial purpose of the uninsured motorist law because government entities are normally able to respond in damages). We are persuaded by these authorities and by our examination of statutory policy that the PEMCO exclusion is valid and enforceable.

In sum, we find that the PEMCO policy passes both parts of the *Kyrkos* test for UIM exclusions. It does not expressly conflict with the language of the UIM statute, and it is consistent with the purpose of UIM coverage, i.e., to protect victims from financially irresponsible motorists by allowing them to recover the damages they would have received had the responsible party maintained liability insurance. If the government entity is insolvent, UIM coverage applies. If the entity is solvent, the victim can seek the damages that would have been received had that governmental entity been insured. The PEMCO exclusion differs in significant degree from the exclusion condemned in *Kyrkos* and warrants our approval.

Given our reversal of the trial court's ruling on coverage, we must vacate the trial court's award of attorney fees to the Bohmes. We hereby reverse the trial court's award of summary judgment in favor of the Bohmes and remand for entry of summary judgment in favor of PEMCO.

DURHAM, C.J., and DOLLIVER, SMITH, GUY, JOHNSON, ALEXANDER, and PEKELIS, JJ., concur.