[No. 35931-2-I.    Division One.    April 29, 1996.]

LAURIE GREENGO, *Respondent*, v. PUBLIC EMPLOYEES
MUTUAL INSURANCE COMPANY, *Appellant*.

*John Budlong and Stafford Frey Cooper*; and *Steven D. Brown, Alexander J. Higgins*, and *Stokes, Eitelbach & Lawrence, P.S.*, for appellant.

*Timothy R. Gosselin* and *Burgess, Fitzer, Leighton & Phillips, P.S.*, for respondent.

COLEMAN, J. — Laurie Greengo argues that she is entitled to recover above the maximum of the higher limit of two applicable underinsured motorist (UIM) policies because her injury was caused by two underinsured drivers even though her insurance contract contains an anti-stacking provision. She further argues that she is entitled to reimbursement for litigation costs and reasonable attorney fees expended in securing her coverage. We affirm the summary judgment award for Public Employees Mutual Insurance Company (PEMCO).

Laurie Greengo was a passenger in a Nissan Sentra that was in an accident with a Chevrolet Citation and a Chevrolet Caprice. David Ferulli was driving the Sentra, which was owned by Carrie Carfrae. The Citation, driven by Michael Hampshire, rear-ended the Sentra. The Sentra rear-ended the Caprice. Greengo sustained significant economic loss and serious bodily injuries, including permanent quadriplegia.

From various policies covering Hampshire, Ferulli, and Carfrae, Greengo received $300,000 in liability insurance payments. The liability payments did not, however, fully compensate Greengo for her injuries. Greengo had UIM coverage under two separate policies: A Unigard policy with a $100,000 limit covered Carfrae's vehicle, and Greengo had a PEMCO policy with a $100,000 UIM limit. After some dispute, Greengo recovered $100,000 from Unigard under Carfrae's UIM coverage. Greengo then tried to recover under her PEMCO policy. PEMCO denied coverage, arguing that an anti-stacking provision in their contract did not permit recovery of UIM benefits when the insured had already recovered the highest policy limit under all applicable UIM policies.

The PEMCO policy provides in part:

> The amount shown on the "Declaration" for "each person" under this coverage is the most we'll pay in damages for **bodily injury** to any one person for any one **accident**.
>
> . . . .
>
> These limits are the most we'll pay for any one **accident** regardless of the number of **covered persons**, claims made, or vehicles or premiums shown on the policy, or premiums paid, or vehicles involved in an **accident**.

In a provision entitled "Other Insurance," a provision states in part:

> If this policy and any other policy providing **underinsured motorist** coverage apply to the same loss, the maximum limit of liability under all policies will be the highest limit of liability that applies under any one policy. If other **underinsured motorist** coverage applies, we'll pay only our fair share of the loss. That share is our proportion of the total **underinsured motorist** insurance that applies to the loss. But any insurance we provide when **you** or a **covered person** use a vehicle you don't own will be excess over any other collectible insurance.

■ The key inquiry is whether Greengo can recover under two separate UIM policies beyond the higher policy's limit because her injury was caused by two underinsured drivers. When reviewing an order of summary judgment, an appellate court must engage in the same inquiry as the trial court. *Marincovich v. Tarabochia*, 114 Wn.2d 271, 274, 787 P.2d 562 (1990) (citing *Highline Sch. Dist. 401 v. Port of Seattle*, 87 Wn.2d 6, 15, 548 P.2d 1085 (1976)). Because the material facts are undisputed, the question is whether PEMCO was entitled to judgment as a matter of law. *See Marincovich*, 114 Wn.2d at 274.

PEMCO claims that Greengo is prohibited from recovering the $100,000 UIM coverage under her policy because she has already recovered $100,000 in UIM benefits under the Unigard policy. PEMCO argues that recovery beyond

$100,000, violates the policy's "anti-stacking" contract provision. Greengo argues that the anti-stacking provision is not implicated because the Unigard UIM payment compensated her for only one underinsured driver. To the extent the policy provides otherwise, Greengo argues that the provision is void under the UIM statute and as a matter of public policy.

The UIM statute permits the inclusion of anti-stacking provisions in an insurance contract. RCW 48.22.030(5), (6). The external anti-stacking provision authorizes the limitation in UIM coverage to the higher applicable limits of all coverages when "other similar insurance" is available under other policies. RCW 48.22.030(6). The internal anti-stacking provision authorizes insurers to define the liability limits within their own policy as the maximum limit of liability for damages "resulting from any one accident, regardless of the number of covered persons, claims made, or vehicles or premiums shown on the policy, or premiums paid, or vehicles involved in an accident." RCW 48.22.030(5).

Courts have repeatedly upheld the anti-stacking provisions. *Doyle v. State Farm Ins. Co.*, 61 Wn. App. 640, 642, 811 P.2d 968, *review denied*, 118 Wn.2d 1005 (1991); *Federated Am. Ins. Co. v. Erickson*, 67 Wn. App. 670, 673-74, 838 P.2d 693 (1992); *Furlong v. Farmers Ins. Co.*, 44 Wn. App. 458, 460-61, 721 P.2d 1010, *review denied*, 107 Wn.2d 1017 (1986). In *Doyle*, this court held that the same PEMCO anti-stacking provision, read within the context of the entire contract, unambiguously prohibited stacking of UIM policies. *Doyle*, 61 Wn. App. at 644-45. Thus, the only question here is whether, when there is more than one underinsured tortfeasor, a UIM award compensates the insured for each underinsured driver or for the entire accident or loss regardless of the number of cars or drivers.

Here, the anti-stacking provision unambiguously prohibits recovery beyond the highest limit of liability under any one policy applying to the "same loss." The

policy also has a provision stating that the limitations apply regardless of the number of people or vehicles involved in the accident. This provision is "intended to reinforce the proposition that the insurer's liability for *any single accident* will not be increased because there were several vehicles involved." 3 ALAN I. WIDISS, UNINSURED & UNDERINSURED MOTORIST INS. § 41.6, at 287 (2d ed. 1992) (emphasis added) (footnote omitted). Thus, we believe that the contract unambiguously specifies that the anti-stacking provision applies to each accident, not each underinsured driver.

■ The remaining question is whether this provision is void under the statute or as a matter of public policy. Greengo argues that the statute does not authorize the "same accident or loss" exclusion contained in the PEMCO policy. Greengo notes that, while the internal anti-stacking statute contains explicit per accident language, the external anti-stacking statute does not. We believe that the external anti-stacking statute applicable here also limits liability on a per accident, not a per driver, basis. *See* RCW 48.22.030(6). Because the purpose of the internal anti-stacking statute is to permit a limitation of an insurer's liability within the insured's policy on a per accident basis, it naturally contains the per accident language. There is no reason to believe that the internal anti-stacking statute authorizes anti-stacking provisions per accident, while the external anti-stacking provision only permits anti-stacking per driver. As stated in *Safeco Corp. v. Kuhlman*, 47 Wn. App. 662, 664, 737 P.2d 274, *review denied*, 108 Wn.2d 1037 (1987), "RCW 48.22.030(5) and (6) allow insurers now to include provisions limiting coverage for liability *for one accident* and preventing an insured person from stacking coverages for multiple automobile policies[.]" (emphasis added.) Thus, the statute and case law support the authorization of per accident, not per driver, limitations.

Greengo correctly points out that Washington's UIM statute has a general policy of protecting innocent victims

and courts liberally construe the statute to protect against underinsured motorists. *See Tissell v. Liberty Mut. Ins. Co.*, 115 Wn.2d 107, 111, 795 P.2d 126 (1990); *Britton v. Safeco Ins. Co.*, 104 Wn.2d 518, 523, 707 P.2d 125 (1985); WIDISS, *supra* § 40.1. The Legislature, however, when it required insurers to offer underinsured motorist coverage, decided to permit anti-stacking provisions. *Cf. Tissell*, 15 Wn.2d at 114 (policy provision prohibiting UIM coverage when same policy's liability coverage applied violated public policy when no applicable statute); *Mutual of Enumclaw Ins. Co. v. Wiscomb*, 95 Wn.2d 373, 382-83, 622 P.2d 1234 (1980) (family and household UIM exclusion clause was void as against public policy when exclusion not explicitly approved by Legislature), *adhered to on reh'g*, 97 Wn.2d 203 (1982). Because a statute now specifically authorizes anti-stacking, we hold that the anti-stacking provision does not violate public policy.

We affirm the lower court's award of summary judgment for PEMCO. We accordingly deny Greengo's request for costs and reasonable attorney fees.

GROSSE and ELLINGTON, JJ., concur.

Review granted at 130 Wn.2d 1015 (1996).