[No. 64218-4. En Banc.]
Argued February 25, 1997. Decided July 23, 1998.
LAURIE GREENGO, *Petitioner,* v. PUBLIC EMPLOYEES MUTUAL INSURANCE COMPANY, *Respondent.*

800

MADSEN, J., DURHAM, C.J., and GUY, JOHNSON, and ALEXANDER, JJ., dissent in part by separate opinion; TALMADGE, J., did not participate in the disposition of this case.

*Stokes, Eitelbach & Lawrence, P.S.*, by *Alexander J. Higgins*; and *John Budlong*, for petitioner.

*Burgess, Fitzer, Leighton & Phillips, P.S.*, by *Timothy R. Gosselin*, for respondent.

SANDERS, J. — Two questions are posed: first, whether an underinsured motorist (UIM) antistacking clause in an insurance policy is valid where it limits an insured's UIM recovery to one recovery per accident from whatever source; and second, whether the serial collision in this case constitutes one accident or two. We agree with the Court of Appeals that the antistacking clause at issue is valid.

However, we cannot conclude from the record that only one accident occurred and, accordingly, reverse and remand.

## FACTS

Twenty-seven-year-old Laurie Greengo was severely injured when the car in which she was riding as a passenger, driven by David Ferulli and owned by Ferulli's fiancée, Carrie Carfrae, rear ended another car on Interstate 5 as the Ferulli vehicle was itself rear ended by a third car driven by Michael Hampshire. While the precise sequence of events is disputed, all agree there were two collisions and, as a result, Ms. Greengo was rendered permanently quadriplegic.

Ms. Greengo recovered $200,000 from Ferulli, the driver of the car in which she was riding. Half this amount was paid under Ferulli's PEMCO liability policy and half was paid under Carfrae's Unigard liability policy on Ferulli's behalf. Further, Unigard paid an additional $100,000 on Ferulli's behalf under Carfrae's UIM coverage. Ms. Greengo also recovered $100,000 from Hampshire's liability insurance carrier.

However, Ms. Greengo's injuries arguably justified a recovery far in excess of the total amount recovered. Accordingly she sought an additional $100,000 from her own insurance carrier, PEMCO, under her policy's UIM coverage which provides:

> [Under your underinsured motorist coverage], we'll pay for bodily injury damages you or a family member sustain when those damages are caused by an underinsured motorist. But the damages must result from an *accident* involving the operation, maintenance, or use of an underinsured motor vehicle. And the damages caused by the underinsured motorist must be those that you or a family member are legally entitled to recover from the underinsured motorist.

Clerk's Papers (CP) at 64 (PEMCO "straight talk" auto policy, Underinsured Motorist Coverages). Ms. Greengo's UIM policy limit is $100,000 per accident.

Her policy defines underinsured motorist as:

> One to which a liability policy or bond applies at the time of the **accident**, but the limit of the liability policy or bond is inadequate to pay the full amount a covered person is legally entitled to recover as damages.

CP at 65. Such is the standard UIM protection whereby the insurer steps into the shoes of a negligent third party to pay the insured the amount, up to policy limits, by which the damage caused to the insured by the negligent third party exceeds the third party's liability coverage. *Jain v. State Farm Mut. Auto. Ins. Co.*, 130 Wn.2d 688, 692, 926 P.2d 923 (1996). Ms. Greengo states the drivers of both vehicles were underinsured because each caused substantially more damage than the limits of each respective liability coverage.

PEMCO, however, defends under the antistacking clause in Ms. Greengo's policy, which purports to limit UIM benefits in cases where the insured collects UIM coverage elsewhere for the same accident. The antistacking clause at issue provides:

> If this policy and any other policy providing **underinsured motorist** coverage apply to the same loss, the maximum limit of liability under all policies will be the highest limit of liability that applies under any one policy.

CP at 65. PEMCO argues $100,000 represents the highest UIM limit of any applicable policy, Ms. Greengo has already received $100,000 in UIM benefits from Unigard, there was but one loss, and, accordingly, the antistacking clause applies to relieve it of any obligation to extend Ms. Greengo any UIM coverage for the one accident suffered.

Ms. Greengo responds that the antistacking clause is void as against the statutory text or public policy of our UIM statute. Additionally, she argues she suffered from two separate accidents and is entitled to recover UIM benefits from PEMCO for at least one of the accidents even if the antistacking clause is valid.

At the trial court level PEMCO sought summary judgment, but only on the antistacking issue, arguing that pursuant to the antistacking provision Ms. Greengo is precluded from any UIM recovery from PEMCO because she already recovered one UIM recovery for the accident. The trial court agreed, granting summary judgment of dismissal in PEMCO's favor. The Court of Appeals affirmed. *Greengo v. Public Employees Mut. Ins. Co.*, 81 Wn. App. 482, 914 P.2d 786 (1996). We granted review. *Greengo v. Public Employees Mut. Ins. Co.*, 130 Wn.2d 1015 (1996).

We agree with the analysis of the Court of Appeals insofar as it concludes the antistacking clause is valid; however, we disagree that the analysis is a valid basis to deny coverage to Greengo. If there were two accidents, then Ms. Greengo is entitled to UIM recovery from PEMCO for the second accident. Here, there is an unresolved factual question as to how many "accidents" occurred. Accordingly, summary judgment dismissal of Ms. Greengo's UIM claim against PEMCO on coverage grounds is error. *See Gossett v. Farmers Ins. Co.*, 133 Wn.2d 954, 963, 948 P.2d 1264 (1997) (summary judgment only appropriate where no material facts in dispute). We therefore reverse dismissal on the coverage question and remand for a factual determination whether there were two accidents or one. Whether such determination requires a trial or may be resolved on summary judgment or should be submitted to arbitration is not before us.

## *Validity of Antistacking Clause*

We first address the validity of the antistacking clause in Ms. Greengo's PEMCO policy. Resolution of this issue is necessary regardless of the number of accidents because the clause limits on a per-accident basis. Ms. Greengo argues that such a per-accident limitation is invalid because (1) it is not authorized by the UIM statute and (2) it undermines the public policy underlying our UIM statute.

We have recognized the Legislature intended broad UIM

coverage when it enacted our UIM statute. *Mid-Century Ins. Co. v. Henault*, 128 Wn.2d 207, 212, 905 P.2d 379, 59 A.L.R.5TH 789 (1995) (citing *Clements v. Travelers Indem. Co.*, 121 Wn.2d 243, 251, 850 P.2d 1298 (1993)). This court has averred it will liberally construe the statute to uphold this legislative mandate and will scrutinize exclusionary clauses to ensure the mandate for broad coverage is neither whittled away nor eroded. *Mid-Century*, 128 Wn.2d at 212 (quoting *Clements*, 121 Wn.2d at 251).

In determining the validity of a UIM exclusionary clause the court applies a two-part test which asks: "Does the proposed exclusion conflict with the express language of the UIM statute? If not, is the exclusion contrary to the UIM statute's declared public policy?" *Bohme v. PEMCO Mut. Ins. Co.*, 127 Wn.2d 409, 412, 899 P.2d 787 (1995) (citing *Kyrkos v. State Farm Mut. Auto. Ins. Co.*, 121 Wn.2d 669, 674, 852 P.2d 1078 (1993)). A UIM exclusionary clause will be upheld only if we can answer both inquiries in the negative. *Bohme*, 127 Wn.2d at 412.

Turning to the first inquiry, we ask whether the exclusion violates the express language of the UIM statute. Ms. Greengo does not reference any express language of the UIM statute which might be violated by the exclusion at issue. After independently reviewing the statute, we are satisfied the exclusion at issue does not violate the express statutory text. On the contrary, we find the UIM statute explicitly permits antistacking clauses of the type at issue here.

The UIM statute authorizes insurers to prohibit "external stacking," which is the practice of adding together different policy coverages to increase available coverage limits:

> The policy may provide that if an injured person has other similar insurance available to him under other policies, the total limits of liability of all coverages shall not exceed the higher of the applicable limits of the respective coverages.

RCW 48.22.030(6). In the UIM context, "[t]he term 'similar insurance' is appropriately understood to be other un-

derinsured motorist insurance coverages." 3 ALAN I. WIDISS, UNINSURED AND UNDERINSURED MOTORIST INSURANCE § 40.1, at 238 (2d ed. 1995). Therefore, the exclusion at issue is statutorily authorized by RCW 48.22.030(6) to the extent it limits the total UIM liability per accident to the single highest UIM liability limit when an insured is covered under more than one UIM policy.

Ms. Greengo argues that there is no "other similar insurance available" to her (RCW 48.22.030(6)), reasoning that even if there is but one accident, her UIM recovery to date represents compensation for only one of the two underinsured motorists. However, RCW 48.22.030(5) unambiguously authorizes insurers to set liability limits on a per accident basis regardless of the number of vehicles involved in the accident:

> The limit of liability under the policy coverage may be defined as the maximum limits of liability for all damages resulting from any one accident regardless of the number of covered persons, claims made, or vehicles or premiums shown on the policy, or premiums paid, or vehicles involved in an accident.

RCW 48.22.030(5).

Ms. Greengo suggests this subsection authorizes per-accident limitations only in the "internal stacking" context, which is the adding together of various coverages within a single policy in order to increase coverage limits. Although we have described RCW 48.22.030(5) as authorizing internal antistacking limitations, *see Britton v. Safeco Ins. Co.*, 104 Wn.2d 518, 532, 707 P.2d 125 (1985), we have never held its authorization is limited only to this context[1] and have noted subsections (5) and (6) may be read together. *See Safeco Corp. v. Kuhlman*, 47 Wn. App. 662, 664, 737 P.2d 274 ("RCW 48.22.030(5) and (6) allow insurers now to include provisions limiting coverage for liability *for one accident* and preventing an insured person from stacking

---

[1]Although we have indicated as much in dicta. *See Edwards v. Farmers Ins. Co.*, 111 Wn.2d 710, 715, 763 P.2d 1226 (1988).

coverages for multiple automobile policies; . . . .") (emphasis added), *review denied*, 108 Wn.2d 1037 (1987).

In any event, lack of express statutory authorization for the precise exclusion is not the focus of our inquiry. Instead we look to whether such exclusion conflicts with the statute.[2] We conclude the exclusion does not conflict with the statute and, in fact, view RCW 48.22.030(5) and (6) as permitting the same. As the Court of Appeals pointed out, external antistacking limitations virtually identical to that in the present case have been upheld as consistent with our UIM statute. *Greengo*, 81 Wn. App. at 485 (citing *Doyle v. State Farm Ins. Co.*, 61 Wn. App. 640, 642, 811 P.2d 968, *review denied*, 118 Wn.2d 1005, 822 P.2d 288 (1991); *Federated Am. Ins. Co. v. Erickson*, 67 Wn. App. 670, 673-74, 838 P.2d 693 (1992); *Furlong v. Farmers Ins. Co.*, 44 Wn. App. 458, 460-61, 721 P.2d 1010, *review denied*, 107 Wn.2d 1017 (1986)).

Next we inquire whether the exclusion at issue violates the public policy underlying the UIM statute. Ms. Greengo argues the exclusion is void as against public policy because it would deny her UIM benefits before she is fully compensated, and it would deny UIM benefits to a named insured who has paid a separate premium.

We begin by addressing the nature of UIM and its underlying public policy. Originally we declared the public policy underlying the predecessor uninsured motorist statute to be full compensation. *See, e.g., Cammel v. State Farm Mut. Auto. Ins. Co.*, 86 Wn.2d 264, 543 P.2d 634 (1975), *overruled by statute as stated in Millers Cas. Ins. Co. v. Briggs*, 100 Wn.2d 1, 4, 665 P.2d 891 (1983). However, in

---

[2]Indeed, we have repeatedly upheld UIM exclusions that are not expressly authorized by the UIM statute. *See, e.g., Millers Cas. Ins. Co. v. Briggs*, 100 Wn.2d 1, 665 P.2d 891 (1983) (upholding exclusion from UIM coverage vehicles insured under the policy that are operated or occupied by an insured at the time of the accident); *Blackburn v. Safeco Ins. Co.*, 115 Wn.2d 82, 794 P.2d 1259 (1990) (upholding enforceability of exclusion from UIM coverage any vehicle with liability coverage under the same policy); *Churchill v. New Hampshire Ins. Co.*, 68 Wn. App. 564, 844 P.2d 459 (upholding provision that excluded from the definition of underinsured vehicle any vehicle with liability coverage under the policy), *review denied*, 121 Wn.2d 1030, 848 P.2d 221 (1993).

1980 the Legislature overruled *Cammel* by statutory amendment adding underinsured motorist coverage. LAWS OF 1980, ch. 117, § 1. In so doing the policy shifted from full compensation to provision of a second layer of floating protection. Indeed, the newly added RCW 48.22.030(5) and (6), which allow antistacking to take effect before full compensation is effectuated, would clearly be at odds with an alleged policy of providing full compensation. Since the 1980 amendments we have most consistently adhered to the statement that the policy underlying UIM is the creation of a second layer of floating protection, not full compensation. *See, e.g., Millers Cas. Ins. Co. v. Briggs*, at 8; *Elovich v. Nationwide Ins. Co.*, 104 Wn.2d 543, 549, 707 P.2d 1319 (1985); *Blackburn v. Safeco Ins. Co.*, 115 Wn.2d 82, 87, 794 P.2d 1259 (1990).

Any doubts on the issue were put to rest in *Tissell v. Liberty Mut. Ins. Co.*, 115 Wn.2d 107, 795 P.2d 126 (1990). While the two-judge lead opinion stated full compensation to be the policy underlying our UIM statute, a seven-judge concurrence expressly disagreed and held the underlying policy is creation of a second floating layer of compensation:

> [T]he [lead opinion's] fixation on the UIM statute's public policy of "full compensation" is misplaced. . . .
>
> The [lead] opinion improperly translates the statutory purpose of assuring a dual layer of recovery into an overriding policy of ensuring "full compensation for accident victims". Majority, at 108, 111, 112. Our prior cases dispute this analysis. . . . It is the UIM statute's policy to assure a second floating layer of compensation.

*Tissell*, 115 Wn.2d at 120 (Callow, C.J., concurring) (citing *Elovich*, 104 Wn.2d at 549-50).

We recognize the two-judge lead opinion in *Tissell* has been cited for the proposition that full compensation

remains the rule.[3] However, we take this opportunity to stress that the actual rule is stated in the *Tissell* concurrence. *See, e.g., Bohme v. PEMCO Mut. Ins. Co.*, 127 Wn.2d 409, 415, 899 P.2d 787 (1995) (" 'UIM coverage is a second layer of coverage for the injured party'. In *Tissell*, a majority of the court was critical of an opinion that translated the purpose of UIM coverage from assuring a dual layer of recovery into ensuring full compensation for accident victims." (citation omitted)) (quoting *Blackburn v. Safeco Ins. Co.*, at 87).

Thus, the public policy underlying UIM is creation of a second layer of floating protection for the insured. In the present case the per-accident, external antistacking clause does not violate this policy because the antistacking clause applies only after the insured has received a full UIM recovery, thus satisfying the requirement that the insured receive a second layer of protection. The clause at issue acts only to prohibit a third layer of recovery, and the UIM statute does not go that far. Accordingly, we find the antistacking clause in the PEMCO policy before us does not violate public policy underlying the UIM statute.

Ms. Greengo also argues her status as a named insured who paid a separate premium for her UIM coverage effects such outcome. Ms. Greengo relies on *Tissell v. Liberty Mut. Ins. Co.* for the proposition that exclusions which deny UIM benefits to a named insured who has paid a separate premium are void as against public policy. Yet, status as a named insured was not the dispositive criterion for the court's decision.

At issue in *Tissell* was the validity of an internal antistacking provision which excluded from the definition of underinsured vehicle any vehicle to which liability coverage under the policy applied. The plaintiff was injured while riding as a passenger in the family car and subsequently died. Through her guardian, the plaintiff made a claim under both the liability and UIM portions of her policy.

---

[3]*See, e.g., Ross v. State Farm Mut. Auto. Ins. Co.*, 132 Wn.2d 507, 516, 940 P.2d 252 (1997).

The insurer paid the liability limits but denied UIM coverage based on its exclusion.

This same exclusion was upheld as applied to third-party insured passengers in *Millers Cas. Ins. Co. v. Briggs*, 100 Wn.2d 1, 665 P.2d 891 (1983) and *Blackburn v. Safeco Ins. Co.*, 115 Wn.2d 82, 794 P.2d 1259 (1990). The *Briggs* and *Blackburn* courts reasoned that the passengers had not paid a premium for the coverage, that honoring the exclusion would not leave them uncompensated because they could collect under the tortfeasor's liability policy, and that they could have purchased their own UIM coverage. *Briggs*, 100 Wn.2d at 7; *Blackburn*, 115 Wn.2d at 91. The same exclusion, however, was held invalid in *Tissell*. The majority distinguished the validity of the exclusion as applied to a third-party insured on the basis that the plaintiff, as a named insured, had paid a separate premium, had not been compensated under both the liability and UIM provisions of the tortfeasor's coverage, and had no other UIM coverage. *Tissell*, 115 Wn.2d at 119 (Callow, C.J., concurring). Therefore, the plaintiff prevailed, not because she was a named insured, but because her status as named insured would otherwise have deprived her of her only source of UIM recovery.

Thus, the dispositive criterion in *Tissell* was whether the policy exclusion would operate to foreclose any possibility of UIM recovery. By foreclosing the plaintiff's only source of UIM benefits, the exclusion would have undermined the public policy of providing a second layer of recovery. Ms. Greengo's status as a named insured does not alter our conclusion that the antistacking provision in question does not violate the public policy underlying the UIM statute. Therefore, we must repair to the fundamental rule that all parties to a contract are held to language of the contract— and insurance contracts are no exception.

We find the exclusion at issue is valid on a per-accident basis because it does not conflict with the text or policy of the UIM statute. However, we must still address whether there was one "accident" or two. If there was but one ac-

cident then the exclusionary clause limits Ms. Greengo's UIM recovery to the $100,000 she recovered from Unigard. If, however, there were two accidents, the exclusionary clause limits Ms. Greengo from collecting UIM benefits from PEMCO for the first accident but not for the second.

## *How Many Accidents*

The issue here is how many accidents occurred. The Court of Appeals assumed there was but one.[4] The parties did not focus on whether there were two accidents until explicitly asked to do so by this court pursuant to RAP 12.1, at which point the parties submitted briefing on the issue.

■ As a threshold matter, PEMCO asserts this court may not address the issue of how many accidents because that issue was not argued below. Generally this court does not consider issues not raised below. *See* RAP 2.5(a); *Obert v. Environmental Research & Dev. Corp.*, 112 Wn.2d 323, 333, 771 P.2d 340 (1989). However, this court has express power to do so on its own motion pursuant to RAP 12.1 which provides:

> **(a) Generally.** Except as provided in section (b), the appellate court will decide a case only on the basis of issues set forth by the parties in their briefs.

> **(b) Issues Raised by the Court.** If the appellate court

---

[4]The Court of Appeals began its opinion by assuming one accident, then stressing the per-accident limitations. The court quoted the following from Ms. Greengo's policy:

> The amount shown on the "Declaration[s]" for "each person" under this coverage is the most we'll pay in damages [under this coverage] for **bodily injury** to any one person for any one *accident*.

> . . . .

> These limits are the most we'll pay for any one *accident* regardless of the number of **covered persons**, claims made, or vehicles or premiums shown on the policy, or premiums paid, or vehicles involved in an *accident*.

*Greengo*, 81 Wn. App. at 484 (quoting CP at 64, *PEMCO "straight talk" auto policy*, "Limits of Liability").

concludes that an issue which is not set forth in the briefs should be considered to properly decide a case, the court may notify the parties and give them an opportunity to present written argument on the issue raised by the court.

We have repeatedly held that RAP 12.1(b) means exactly what it says: This court may raise issues sua sponte and may rest its decision thereon. *See, e.g., Obert v. Environmental Research & Dev. Corp.*; *Alverado v. Washington Pub. Power Supply Sys.*, 111 Wn.2d 424, 429, 759 P.2d 427 (1988); *Haslund v. City of Seattle*, 86 Wn.2d 607, 616, 547 P.2d 1221 (1976). *See also* 3 LEWIS H. ORLAND & KARL B. TEGLAND, WASHINGTON PRACTICE, RAP 12.1 cmt. 3, at 309-10 (4th ed. 1991).

In the present case this court determined resolution of the issue of multiple accidents was necessary for the proper resolution of the case and, citing RAP 12.1(b), formally directed the parties to brief the issue. The parties have complied and the issue is now before us.

In her supplemental brief Ms. Greengo asserts she "was involved in two 'accidents' for purposes of her PEMCO policy because two drivers proximately caused her injuries in two collisions." Pet'r's Informal, Additional Br. Pursuant to RAP 12.1(b), at 1.

■ We have previously considered situations involving two or more collisions to determine whether there were two or more "accidents" for insurance purposes.[5] Where there were two collisions, we look to see if each has its own proximate cause. If so then there are two accidents. As an Illinois court explained, "A majority of foreign courts have concluded that the number of occurrences is determined by referring to the cause or causes of the damage (the 'cause'

---

[5]For example, in *Roller v. Stonewall Ins. Co.*, 55 Wn. App. 758, 780 P.2d 278 (1989), *rev'd on other grounds by* 115 Wn.2d 679, 801 P.2d 207 (1990), after two cars collided the passenger got out to take the other driver's information and was then hit by that second car. The second collision constituted a second accident. *See also Anchor Cas. Co. v. McCaleb*, 178 F.2d 322 (5th Cir. 1949) (a series of explosions at an imploded oil well over two days constituted several "accidents" for insurance coverage purposes).

theory), as opposed to the number of individual claims or injuries (the 'effect' theory)." *Illinois Nat'l Ins. Co. v. Szczepkowicz*, 185 Ill. App. 3d 1091, 542 N.E.2d 90, 92, 134 Ill. Dec. 90 (1989). Washington follows the cause theory.

Under our approach if each accident, collision, or injury has its own proximate cause then each will be deemed a separate "accident" for insurance policy purposes even if the two accidents occurred coincident, or nearly coincident, in time. For example, in *Liberty Mut. Ins. Co. v. Rawls*, 404 F.2d 880 (5th Cir. 1968), the Fifth Circuit found two separate accidents where one car was involved in two collisions two to five seconds apart and 30 to 300 feet apart. If, however, the collisions or injuries were all caused by a single, uninterrupted proximate cause, then the multiple collisions or injuries will be deemed a single accident. Two Washington cases outline our approach and control our analysis.

In *Truck Ins. Exch. v. Rohde*, 49 Wn.2d 465, 303 P.2d 659, 55 A.L.R.2D 1288 (1956), the insured was driving his car and veered across the median into the oncoming lane where he struck, in quick succession, three motorcycles riding in echelon formation. The trial court found there were three separate "accidents" for insurance purposes. This court reversed, concluding there was but one accident. This court based its holding on a finding that there was but one proximate cause for all three collisions, the driver's negligence in losing control and veering across the median. *Id.* at 471 ("There was but one proximate, uninterrupted, and continuing cause which resulted in all of the injuries and damage.").

In *Transcontinental Ins. Co. v. Public Utils. Dists.' Util. Sys.*, 111 Wn.2d 452, 760 P.2d 337 (1988), the issue was whether a set of losses following a bond default by a public utility district (PUD) constituted a single occurrence or accident for insurance policy purposes. The PUD alleged there was more than one proximate cause to the losses and, therefore, more than one accident or occurrence for insurance purposes. *Id.* at 466. This court agreed and held

that if the PUD's allegations were correct then there would be more than one accident or occurrence for insurance purposes. *Id. Transcontinental* explained the collisions in *Rohde* "resulted from one proximate, uninterrupted cause, the driver's loss of control, [and thus] only one occurrence took place." *Transcontinental*, 111 Wn.2d at 466 (citing *Rohde*, 49 Wn.2d at 471). *Transcontinental* thus articulated the rule: "[T]he number of triggering events [for insurance policy purposes] depends on the number of causes underlying the alleged damage and resulting liability." 111 Wn.2d at 467. We reaffirm and follow this approach today.

Both parties here agree on the legal standard. *See* Supplemental Br. of Resp't at 7 (*Rohde* "makes clear that the critical issue for purposes of determining the number of accidents is the number of proximate causes."); Pet'r's Informal, Additional Br. Pursuant to RAP 12.1(b), at 4 ("the number of 'accidents' is determined by the number of causes underlying the injury and resulting liability").

 The question, therefore, is whether the two collisions had separate proximate causes. Ms. Greengo references the police report which states that Ferulli first crashed into a slowing car in front and then Hampshire subsequently slammed into Ferulli. The report also states both Ferulli and Hampshire were following too closely. If the events occurred as described in this police report, both Ferulli and Hampshire were separately negligent and each of the two collisions has its own separate proximate cause. Under *Transcontinental* the two collisions would then constitute two separate "accidents."

PEMCO however does not concede Ms. Greengo's version of events and contests Ferulli's negligence. The record below was not factually developed on this point as that proceeding concerned legal issues of coverage based on the exclusion.

Accordingly, we remand for further proceedings. *See Gossett v. Farmers Ins. Co.*, 133 Wn.2d 954, 963, 948 P.2d 1264 (1997) (summary judgment appropriate only where there is no genuine issue as to any material fact). If it is determined

on remand that the two collisions resulted from separate proximate causes, there would necessarily be two "accidents" for policy purposes. In such case it would then be necessary to establish that both Ferulli and Hampshire were underinsured. Such would require a finding that the liability insurance of each was insufficient to cover the damage sustained by Ms. Greengo. *See Jain v. State Farm Mut. Auto. Ins. Co.*, 130 Wn.2d 688, 692, 926 P.2d 923 (1996). PEMCO, in its answer, formally concedes that Hampshire is underinsured. CP at 10 ("Defendant's Answer and Affirmative Defenses to Complaint for Declaratory Relief and Damages," para. V.). Thus, such finding need be made only as to Ferulli.

Upon such finding, Ms. Greengo would be entitled to recover up to $100,000 in UIM benefits from PEMCO under her PEMCO policy for the second collision. Ms. Greengo correctly points out she received $100,000 in UIM from Unigard under Carfrae's Unigard policy for one of the accidents and because of the antistacking clause is not entitled to further UIM from PEMCO for that accident. However, if there was a second accident Ms. Greengo did not receive any UIM benefits for that second accident from any source and would therefore be entitled up to the $100,000 limits of the UIM coverage in her PEMCO policy.

### *Reasonable Attorney Fees*

Ms. Greengo asserts her right to recover reasonable attorney fees because she has successfully established "coverage" pursuant to *Olympic S.S. Co. v. Centennial Ins. Co.*, 117 Wn.2d 37, 53, 811 P.2d 673 (1991) and its progeny. However, Justice Madsen argues an attorney fee award is premature until, and unless, Ms. Greengo establishes there were two "accidents" and actually recovers a monetary award against PEMCO under its policy's UIM provisions.

The search for the proper answer to the question of attorney fees requires us to revisit prior precedent.

Our decision in *Olympic Steamship* overruled prior case

law, opining "an award of fees is required in any legal action where the insurer compels the insured to assume the burden of legal action, to obtain the full benefit of his insurance contract . . . ." 117 Wn.2d at 53.

We later clarified the new-found entitlement to arise only when an insurer wrongfully denies "coverage" as distinguished from the situation where "coverage" is conceded but the claim fails or recovery is diminished on its factual merits. *Leingang v. Pierce County Med. Bureau, Inc.*, 131 Wn.2d 133, 147, 930 P.2d 288 (1997).[6]

In *Leingang* we concluded the real dispute was over coverage as it was the claim of the insurer that the exclusion at issue denied the possibility of recovery under any foreseeable facts. Thus, in *Leingang* we held the insurer liable for the reasonable attorney fees its insured incurred in its successful effort to overcome the asserted policy exclusion from coverage. Other cases with a similar result include *Gossett v. Farmers Ins. Co.*, at 982, and *American Nat'l Fire Ins. Co. v. B&L Trucking & Constr. Co.*, 134 Wn.2d 413, 430, 951 P.2d 250 (1998). *Compare Dayton v. Farmers Ins. Group*, 124 Wn.2d 277, 280-81, 876 P.2d 896 (1994) (no reasonable attorney fees allowed where the insurer accepted coverage but resisted paying the claim on its facts thereby forcing its insured through arbitration).[7]

Our resolution of the case at bar affirmatively answers

---

[6] If a claim is denied on the basis of an alleged lack of coverage and a court later determines there is coverage, then the case would fall under the rule of *Olympic Steamship*. The holding of *Olympic Steamship* and *Dayton* [*v. Farmers Ins. Group*, 124 Wn.2d 277, 280-81, 876 P.2d 896 (1994)] is that an insured is entitled to attorney fees if the insured litigates an issue of coverage, but not if the issue is merely a dispute about the value of a claim.

*Leingang v. Pierce County Med. Bureau, Inc.*, 131 Wn.2d 133, 147, 930 P.2d 288 (1997).

[7]*Stuart v. American States Ins. Co.*, 134 Wn.2d 814, 953 P.2d 462, 467 (1998) must be distinguished. That proceeding involved whether the particular foster care at issue was a "business pursuit" thus justifying denial of coverage as per the exclusion. We held such was a factual question to be answered on remand, potentially justifying an award of reasonable attorney fees if the question was answered in the insured's favor at that time. Here, however, PEMCO's summary

the threshold coverage question, while reserving the ultimate factual entitlement to a monetary recovery against the insurer, as well as the amount of that recovery, to remand. Therefore an award of reasonable attorney fees at this stage of the proceeding is appropriate.

That this case involves the denial of coverage is apparent from the record. The summary judgment denies Ms. Greengo any recovery against PEMCO under *any* alternative factual scenario pertaining to the number of "accidents" as we have defined that term for the purpose of this policy.

PEMCO moved for summary judgment in the trial court "dismissing plaintiff's [Ms. Greengo's] claim for UIM coverage." CP at 113. For the purposes of that motion PEMCO conceded there were "two at-fault vehicles" and attached a copy of the police report to its moving papers which depicted the Ferulli vehicle first striking the lead vehicle after which the Hampshire vehicle struck the Ferulli vehicle. CP at 18. In that motion PEMCO clearly articulated its position that regardless of the order, mechanics, or cause of the collisions, the UIM payment from Unigard absolved PEMCO of any further liability pursuant to Ms. Greengo's PEMCO policy, regardless of the number of accidents ultimately determined. *See* CP at 118, 120 (Def.'s Mot. and Mem. in Support of Summ. J.) and CP at 156, 157. This denial of coverage notwithstanding the number of proximate causes of the "accident" or "accidents" was affirmed by summary judgment. Thus the trial court entered the order of dismissal which foreclosed recovery by Ms. Greengo no matter what the facts:

> ORDERED, ADJUDGED AND DECREED that plaintiff Laurie Greengo is not entitled to receive underinsured motorist benefits from Pemco policy number CA 0579447 in addition to those benefits she has already received from Unigard Insurance Company on account of the automobile accident that occurred on September 27, 1991 . . . .

---

judgment made the relevant factual inquiry irrelevant whatever its outcome based on a legally erroneous application of a policy exclusion to facts which, if established, would as a matter of law entitle the insured to coverage.

CP at 254. PEMCO and the trial court in its order used the term "accident" broadly, loosely, and improperly, to encompass the entire occurrence. Thus, Greengo was denied her contractual right to recover on her policy against PEMCO even in the event her injuries were caused by two "accidents" wherein it was shown each at-fault driver was a separate proximate cause of her injuries.

This constitutes a wrongful denial of coverage because PEMCO·has, in violation of its policy, reduced " 'the sum of risks which an insurance policy covers' " to exclude the multiple proximate cause scenario contrary to the requirements of the policy as we construe it. *Government Employees Ins. Co. v. Woods*, 59 Wn.2d 173, 180, 367 P.2d 21 (1961) (quoting *Freimuth v. Glens Falls Ins. Co.*, 50 Wn.2d 621, 314 P.2d 468, 471 (1957)). In consequence Ms. Greengo is therefore entitled to recover her reasonable attorney fees at this point in time because it was absolutely necessary for her to undertake and win this appeal to establish coverage for multiple accidents notwithstanding the Unigard payment.

If coverage and the merits of the claim are separate questions, as we have held they are in *Leingang, Dayton*, and like authority, Ms. Greengo has a right to recover her reasonable attorney fees because she has successfully established "coverage." Moreover, any further attorney fees recovered on the remand are not a cost to establish coverage but rather a cost to factually prove one's entitlement to recover on the merits.

The Court of Appeals is therefore reversed and this case is remanded for further proceedings consistent with this opinion and Ms. Greengo shall recover her costs on appeal.

DOLLIVER and SMITH, JJ., concur.

MADSEN, J. (concurring/dissenting) — [11] I concur with the result reached by the majority departing only on the issue of attorney's fees. In *Olympic S.S. Co. v. Centennial Ins. Co.*, 117 Wn.2d 37, 53, 811 P.2d 673 (1991), this court

recognized that an insured who is compelled to sue to obtain the benefit of an insurance contract is entitled to attorney's fees. In this case, however, Ms. Greengo did not recover pursuant to her underinsured motorist (UIM) policy. The trial court granted PEMCO summary judgment finding that Ms. Greengo could not obtain the desired coverage by stacking UIM policies. Both this court and the Court of Appeals agreed.

We remanded to determine if two accidents were involved since then Ms. Greengo would be entitled to coverage pursuant to her UIM policy. This court *did not* find that Ms. Greengo was entitled to the benefit of coverage on appeal. Only if it is determined that two accidents were involved will Ms. Greengo be entitled to the benefits of her coverage and attorney's fees properly be considered. Conversely, if the trial court does not conclude that two separate accidents occurred then her coverage will be denied making *Olympic Steamship* fees improper. The majority's award of attorney's fees is premature since there has not yet been a determination as to whether Ms. Greengo will recover damages pursuant to her UIM policy.

DURHAM, C.J., and GUY, JOHNSON, and ALEXANDER, JJ., concur with MADSEN, J.