[No. 26337–4–I.   Division One.   June 17, 1991.]

WESLEY E. DOYLE, ET AL, *Respondents,* v. STATE
FARM INSURANCE COMPANY, *Defendant,*
PEMCO INSURANCE COMPANY,
*Appellant.*

*Sidney R. Snyder, Jr., Ronald S. Dinning,* and *Merrick
Hofstedt & Lindsey,* for appellant.

*Thomas J. Chambers,* for respondents.

GROSSE, C.J.—PEMCO Insurance Company (PEMCO) appeals from a summary judgment entered in favor of Myrtha and Wesley Doyle permitting the Doyles to "stack" multiple insurance coverages. Finding that the "other insurance" clause in PEMCO's underinsured motorist's policy is unambiguous and enforceable, we reverse.

The material facts are undisputed. On May 7, 1989, respondent Myrtha Doyle was a passenger in a car owned and driven by Constance Daily. A car driven by Shane Blake collided with Daily's car, seriously injuring Doyle. At least six other persons were injured in the collision.

Blake was an insured under a policy issued by North Pacific Insurance Company (North Pacific) with liability limits of $300,000 per accident. Because the potential claims exceeded the policy's limits, North Pacific filed an interpleader action to determine the rights of the claimants. Daily was an insured under a policy issued by State Farm Insurance Company (State Farm). The State Farm policy provided underinsured motorist (UIM) coverage to passengers of $50,000 per person and $100,000 per accident.

Myrtha Doyle was an insured under a policy issued by appellant PEMCO. The PEMCO policy also limited UIM coverage to $50,000 per person.

On January 3, 1990, the Doyles filed a complaint against State Farm and PEMCO to compel arbitration. By way of a counterclaim and cross claim, PEMCO sought declaratory relief, arguing that the "other insurance" clause of the Doyles' policy precluded the "stacking" of multiple coverages and limited PEMCO's UIM coverage to the difference between $50,000 (the limits of PEMCO's policy) and the amount of UIM benefits that the Doyles were able to recover from State Farm.

The parties filed cross motions for summary judgment. On May 31, 1990, the trial court granted the Doyles' motion and denied PEMCO's motion. The court concluded that PEMCO's "other insurance" clause was ambiguous and

construed the policy against PEMCO, ruling that the Doyles were therefore entitled to stack coverages.

Because there are no material disputed facts, the issue on appeal is whether the Doyles were entitled to judgment as a matter of law. CR 56(c). The "other insurance" clause contained in the UIM section of the PEMCO policy issued to the Doyles provided as follows:

**Other Insurance**
If this policy and any other policy providing **underinsured motorist** coverage apply to the same loss, the maximum limit of liability under all policies will be the highest limit of liability that applies under any one policy. If other **underinsured motorist** coverage applies, we'll pay only our fair share of the loss. That share is our proportion of the total **underinsured motorist** insurance that applies to the loss. But any insurance we provide when **you** or a **covered person** use a vehicle **you** don't own will be excess over any other collectible insurance.

The first sentence of this clause limits the maximum liability "under *all* policies" to the "highest limit of liability that applies under any one policy." Such "antistacking" limitations are authorized by statute and have been repeatedly upheld by the courts. *See* RCW 48.22.030(6); *Furlong v. Farmers Ins. Co.*, 44 Wn. App. 458, 721 P.2d 1010, *review denied*, 107 Wn.2d 1017 (1986); *Anderson v. American Economy Ins. Co.*, 43 Wn. App. 852, 719 P.2d 1345 (1986).

The Doyles do not contend that the "antistacking" restriction itself is ambiguous or unenforceable. Rather, they rely on the final sentence of the "other insurance" clause:

But any insurance we provide when **you** or a **covered person** use a vehicle **you** don't own will be *excess* over any other collectible insurance.

(Italics ours.) Focusing on the word "excess", the Doyles contend that when this language is given its plain meaning, it constitutes an exception to the antistacking provision, promising additional protection after any other primary coverage is exhausted when an insured is injured in a non-owned vehicle. In the alternative, to the extent it conflicts with the antistacking provision, the Doyles assert, the

"excess" provision is ambiguous and must be construed against PEMCO.[1]

■■ We have rejected such an interpretation in analyzing the effect of an "other insurance" clause that is functionally identical to PEMCO's. In *Anderson v. American Economy Ins. Co., supra,* the insured was injured in a collision with an uninsured driver while driving his wife's automobile. After his wife's insurer paid the full limits of UIM coverage under her policy, the insured sought payment on his own UIM policy. After upholding an exclusion for noncovered vehicles owned by family members, the *Anderson* court concluded that coverage was also precluded by the "other insurance" clause in the insured's policy:

> The "other insurance" clause in Anderson's underinsured motorist endorsement is unambiguous in limiting the underinsured motorist payments to the highest applicable policy amount; further, where a nonowned vehicle is involved, such payments would be made under Anderson's policy only in excess of the recoverable amount under the primary insurance policy. Here Anderson has already been paid by his wife's insurer the higher underinsured motorist coverage limit under either of the two applicable policies so that such payments are not recoverable under his own insurance policy.

*Anderson,* 43 Wn. App. at 860.[2] This analysis is equally applicable to PEMCO's policy. The Doyles have failed to distinguish or even address *Anderson;* nor have they cited any legal authority supporting their interpretation of the "other insurance" clause.[3]

[1]The two sentences between the antistacking provision and the "excess" provision, which delineate PEMCO's "fair share" or "pro rata" obligations, are not at issue here.

[2]The "other insurance" clause at issue in *Anderson* provided in part: "If this policy and any other policy providing similar insurance apply to the same accident, the maximum limit of liability under all the policies shall be the highest applicable limit of liability under any one policy. However, any insurance we provide with respect to a vehicle you do not own shall be excess over any other collectible insurance." *Anderson,* 43 Wn. App. at 859.

[3]Neither *Boeing Co. v. Aetna Cas. & Sur. Co.,* 113 Wn.2d 869, 784 P.2d 507 (1990), nor *Nichols v. CNA Ins. Cos.,* 57 Wn. App. 397, 788 P.2d 594, *review*

The antistacking provision establishes the maximum limit of UIM liability among multiple policies; the remaining provisions of the "other insurance" clause essentially govern the order and share of payments to be made by multiple insurers up to the limits of liability established by the antistacking restriction. These provisions, including the "excess" provision, are consistent and unambiguous. The amount of UIM benefits payable in a specific case when the insured is injured in a nonowned vehicle will depend on the liability limits of the applicable policies and on the amount that the insured recovers from other policies. The fact that a determination of the scope of coverage may require examination of several provisions, however, does not render the provisions inconsistent or ambiguous. *See State Farm Gen. Ins. Co. v. Emerson,* 102 Wn.2d 477, 484–85, 687 P.2d 1139 (1984).

The Doyles also rely on the "other insurance" clause contained in the general "Policy Provisions" section of PEMCO's policy. This clause, however, merely defines the terms "primary" and "excess" insurance as applicable to the entire policy.[4] These definitions are consistent with the usage of "excess" in the UIM section. *Cf. Schab v. State Farm Mut. Auto. Ins. Co.,* 41 Wn. App. 418, 704 P.2d 621

---

*denied,* 115 Wn.2d 1003 (1990), cited by the Doyles, is relevant. Both decisions involve provisions that are not remotely similar to those at issue here.

[4]The clause provides as follows:

**"Other Insurance—Primary and Excess Insurance**

"The insurance we provide for any **auto** described on the 'Declarations' or for any replacement or additional **auto** we insure under this policy is *primary*. That is, it pays even if other insurance applies.

"Any insurance provided by this policy for any **motor vehicle you** don't own is *excess*. That is, it protects **you** after the limit of primary insurance provided by another policy or loss–protection plan is exhausted or if there's no primary insurance or loss protection for that **motor vehicle.**

"Sometimes, other primary insurance is available for a **motor vehicle** when our insurance also is primary. Or, other excess insurance is available for a *motor vehicle* when our insurance is excess. In either case, we'll pay only our fair share of any loss or damage. That share is our proportion of the total liability limit that applies to the loss. This definition of 'our fair share' applies to all parts of this policy except 'Parts II [Underinsured Motorist Coverages] and III.'"

(1985) ("excess" clause held unambiguous and enforceable in context of PIP payments).

In summary, read in context, the "other insurance" provisions in PEMCO's policy do not constitute an affirmative grant or promise of coverage beyond the limits of liability established by the antistacking restriction. The Doyles' argument regarding "excess" coverage is sustainable only if the term "excess" and its definition are viewed in isolation from the rest of the policy. In construing the language of an insurance policy, however, a court must examine the contract as a whole. *E–Z Loader Boat Trailers, Inc. v. Travelers Indem. Co.*, 106 Wn.2d 901, 907, 726 P.2d 439 (1986).

The judgment is reversed and the matter remanded to the trial court with instructions to enter summary judgment in PEMCO's favor.

SCHOLFIELD and AGID, JJ., concur.

Reconsideration denied August 7, 1991.