[No. 21326-9-III. Division Three. January 23, 2003.]

JO F. HARDY, *Appellant*, v. PEMCO MUTUAL INSURANCE COMPANY, *Respondent*.

*Debra L. Stephens*, for appellant.

*Ronald S. Dinning* and *Sidney R. Snyder, Jr.* (of *Merrick, Hofstedt & Lindsey, P.S.*), for respondent.

BROWN, C.J. — Jo F. Hardy was seriously injured in an automobile accident while driving another person's vehicle. Her injuries exceeded the $50,000 limit she received from the at-fault driver's insurance company. She received $100,000 from the owner of the vehicle's underinsured motorist (UIM) policy. Ms. Hardy then sought $250,000 in UIM coverage from her insurance company, Pemco Mutual Insurance Company (Pemco). Relying on an antistacking provision in her policy, Pemco limited coverage to $150,000. Ms. Hardy filed a complaint, which the trial court summarily dismissed. She now appeals, contending Pemco cannot reduce its maximum UIM liability by the amount of UIM coverage provided by the owner of the vehicle's policy.

We reject Ms. Hardy's contention based upon settled authority and affirm.

## FACTS

The facts are undisputed. Ms. Hardy was seriously injured in an automobile accident while driving a vehicle she did not own that was insured by State Farm Insurance (State Farm). The State Farm policy provided UIM coverage with limits of $100,000 for injury to one person. The at-fault driver was insured by County Companies with a liability limit of $50,000 for injury to one person.

At the time of the accident, Ms. Hardy carried automobile insurance with Pemco. Her policy included a $250,000 UIM coverage limit. Applicable to this coverage were antistacking and excess insurance clauses.

County Companies paid its $50,000 limit to Ms. Hardy in exchange for a release of claims against its insured. State Farm paid Ms. Hardy its $100,000 UIM limit. Both parties agree Pemco's UIM coverage is excess to the primary UIM coverage provided by State Farm.

Ms. Hardy advised Pemco of these payments and made a demand for UIM coverage based on anticipated damages exceeding these amounts. Pemco responded to Ms. Hardy's claim by taking the position that the combined UIM recovery under both the Pemco and State Farm policies could not exceed the $250,000 limit of the Pemco policy. Since State Farm had already paid $100,000, Pemco concluded the maximum amount required to be paid in UIM benefits was $150,000. Ms. Hardy filed a breach of contract claim, seeking a declaration that the amount available from Pemco was $250,000. Pemco subsequently paid Ms. Hardy $150,000.

Both parties requested summary judgment. The trial court granted Pemco's request, concluding $150,000 was the maximum amount of UIM coverage available to Ms. Hardy arising out of this accident. The Supreme Court denied Ms. Hardy's request for direct review and transferred this case to our court.

## ANALYSIS

The issue is whether the trial court erred by granting Pemco's request for summary judgment and concluding $150,000 was the maximum amount of UIM coverage available to Ms. Hardy.

■ The standard of review of an order of summary judgment is de novo, and the appellate court performs the same inquiry as the trial court. *Lybbert v. Grant County*, 141 Wn.2d 29, 34, 1 P.3d 1124 (2000). Ms. Hardy contends

the trial court should have concluded $250,000 was available in UIM coverage.

 Pemco's policy contains the following clause regarding UIM coverage:

**Other Insurance**

If this policy and any other policy providing **underinsured motorist** coverage applies to the same loss, the maximum limit of liability under all policies will be the highest limit of liability that applies under any one policy. If other **underinsured motorist** coverage applies, we'll pay only our fair share of the loss. That share is our proportion of the total **underinsured motorist** insurance that applies to the loss. But any insurance we provide when **you** or **a covered person** use a vehicle **you** don't own will be excess over any other collectible insurance.

Clerk's Papers at 23. The first sentence is known as an antistacking clause, and this specific Pemco clause has been declared valid. *Greengo v. Pub. Employees Mut. Ins. Co.*, 135 Wn.2d 799, 805, 959 P.2d 657 (1998). The last sentence is known as an excess insurance clause, meaning that the excess insurer's liability does not arise until the primary insurer's policy limits have been exceeded. *Millers Cas. Ins. Co. of Tex. v. Briggs*, 100 Wn.2d 9, 12, 665 P.2d 887 (1983). Ms. Hardy argues the excess insurance provision should be read to stand alone, that is, without regard to the rest of the paragraph. In other words, the antistacking limits found in the first sentence do not apply when the Pemco policy is excess insurance. She relies on *Diaz v. National Car Rental Systems*, 143 Wn.2d 57, 17 P.3d 603 (2001) to support this argument.

The Supreme Court in *Diaz* said the use of the word " 'however' " in the beginning of a sentence meant that the sentence should be read without reference to the first two sentences of the paragraph. *Id.* at 65. Ms. Hardy says the use of the word "but" should have the same effect here. The word "but," however, is a coordinating conjunction that gives the idea expressed weight equal to that of the previously expressed ideas. Moreover, the Supreme Court did not

mean that using the word "however" allows one to ignore the other sentences in the paragraph. *Id.* The court said that in context, "however" meant " 'notwithstanding.' " *Id.* at 66 (quoting WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 1097 (1971)). "Therefore, we read the third sentence to say that notwithstanding what was said before (in sentences one and two), National will provide renters with primary insurance if they opt for [supplemental liability insurance]." *Id.* The court did not read the third sentence in isolation, but rather interpreted it to mean that the first two sentences did not apply once the contingency set forth in the third sentence was satisfied. Courts must examine the language of an insurance contract as a whole when interpreting the contract. *E-Z Loader Boat Trailers, Inc. v. Travelers Indem. Co.*, 106 Wn.2d 901, 907, 726 P.2d 439 (1986). The *Diaz* court did just that.

Here, the first sentence sets the liability limit when more than one insurance contract provides coverage. The third sentence says that when the insured is operating a nonowned vehicle, any insurance provided by the insurer is excess rather than primary. But the third sentence does not eliminate the liability limit set by the first sentence. Ms. Hardy cites *Millers* for the unremarkable proposition that the liability of an excess insurer does not arise until the limits of the primary policy have been exhausted. She says the court of appeals' decisions upholding similar provisions are inconsistent with *Millers* because stacking does not apply to primary and excess insurance. Ms. Hardy has not provided any authority for her argument that primary and excess insurance cannot be stacked. Under these circumstances, Pemco's liability does not arise until the primary insurer's (State Farm's) liability limits have been met. And Pemco's limits are plainly explained in the first sentence. Division One of this court has interpreted this same Pemco clause under the same challenge, concluding that the antistacking limitation applied when the Pemco policy provided

excess insurance. *Doyle v. State Farm Ins. Co.*, 61 Wn. App. 640, 645, 811 P.2d 968 (1991). Our Supreme Court has cited *Doyle* with approval, and has done so recently. *See, e.g., Greengo*, 135 Wn.2d at 808.

Accordingly, Pemco's UIM coverage is limited to $150,000 in this case. The trial court correctly granted summary judgment to Pemco.

■ Ms. Hardy requests attorney fees at trial and on appeal under *Olympic Steamship Co. v. Centennial Insurance Co.*, 117 Wn.2d 37, 811 P.2d 673 (1991). Attorney fees under *Olympic Steamship* are available only when the insured prevails. *Dien Tran v. State Farm Fire & Cas. Co.*, 136 Wn.2d 214, 232-33, 961 P.2d 358 (1998). Because she did not prevail below or here, Ms. Hardy is not entitled to attorney fees.

Affirmed.

SCHULTHEIS and KATO, JJ., concur.

Reconsideration denied February 21, 2003.

Review denied at 150 Wn.2d 1011 (2003).