[No. 29380-7-III.   Division Three.   October 10, 2011.]

DENNIS R. BALDWIN ET AL., *Plaintiffs*, v. THOMAS J. SILVER
ET AL., *Appellants*, FARMERS INSURANCE
OF WASHINGTON, *Respondent*.

464

*George R. Guinn*, for appellants.

*Eric J. Neal* and *Thomas Lether* (of *Lether & Associates PLLC*) and *Kimberly L. Rider* (of *Cole Lether Wathen Leid & Hall PC*), for respondent.

¶1 SWEENEY, J. — Ultimately, the parties to this suit are the homeowners and their insurance company. The suit follows a fire loss. A contractor sued the homeowners and their insurance company for failing to pay for the contractor's repair work. The insurance company issued a check directly to the homeowners. The homeowners cashed the check but did not pay the contractor. So the insurance company wound up paying the contractor. The homeowners, nonetheless, sued the insurance company and alleged a number of causes of action. The superior court rejected all of them and summarily dismissed the homeowners' suit. The superior court was correct and we affirm the summary dismissal.

## FACTS

¶2 A grease fire damaged part of Thomas and Robin Silver's home and deck on April 3, 2006. *Baldwin v. Silver*, 147 Wn. App. 531, 533-34, 196 P.3d 170 (2008). The Silvers filed a claim for insurance coverage under their homeowners' policy with Farmers Insurance of Washington to pay to repair the damage. *Id.* Farmers accepted coverage. Farmers agreed to make loss payments payable to the Silvers: "We shall adjust all losses with you. We shall pay you unless another payee is named in the policy." Clerk's Papers (CP) at 146.

¶3 Three contractors worked to repair the Silvers' home. Dennis and Deborah Baldwin, d/b/a B&D Construction, repaired damage to the inside of the home. Their services cost $2,727.96. ServiceMaster and Magic Carpet also performed repair work. ServiceMaster charged $2,744.53 for its services. Magic Carpet charged $1,103.08 for its services, which should have included power washing that portion of the decking that had been damaged by fire.

¶4 On April 28, Farmers sent the Silvers a letter with an estimate and a check payable to "Robin G. & Tom Silver" for $3,438.17. The letter says the check is "for the covered portion of your building claim based on the attached esti-

mate." CP at 242. The estimate states that the cost of repairing the damage to the inside of the home totaled $3,438.17. The Silvers cashed the check but did not pay any of the contractors. Farmers ultimately paid the contractors and vendors directly. It paid Magic Carpet $1,103.08 in June. It paid ServiceMaster $1,534.32 in July. And it issued checks to the Silvers for their labor ($654.43), their children's temporary housing expenses ($100.00), and for Ms. Silver's temporary housing expenses and additional utility expenses ($70.00).

¶5 B&D Construction sued the Silvers and Farmers for payment and placed a lien on the Silvers' property in August. Ms. Silver took B&D Construction's complaint to her Farmers' agent right after she was served. The agent made copies of the complaint and other documents Ms. Silver had with her. Neither Ms. Silver nor Mr. Silver formally asked Farmers to defend them in writing. And Farmers did not do so.

¶6 The Silvers hired their own attorney and cross claimed against Farmers for breach of contract; bad faith insurance practices; and violations of the Consumer Protection Act, chapter 19.86 RCW. The Silvers alleged that Farmers breached its duties to pay for all fire damage repairs, to close the claim after the repairs were complete, and to defend the Silvers against B&D Construction's claims. They sought damages for the lien on their residence, their tarnished reputation and credit history, liability to B&D Construction and ServiceMaster for unpaid invoices, unrepaired damage to the Silvers' home, attorney fees and litigation costs incurred in defending against B&D Construction, and treble damages.

¶7 In October 2006, Farmers settled B&D Construction's claim for $6,225.74, and B&D Construction assigned its rights against the Silvers to Farmers. Farmers then answered the Silvers' cross claim, arguing that the claim was barred by judicial estoppel, and cross claimed against the Silvers for the amount it paid B&D Construction. Farmers

asserted it had paid the Silvers for B&D Construction's work but that the Silvers failed to forward that payment to B&D Construction.

¶8 Farmers cancelled the Silvers' insurance policy in March 2007 for failing to pay the contractors. To secure a new insurance policy with another insurance company, the Silvers removed their deck. They claimed that Farmers should pay for the cost of removing the old deck and installing a new deck.

¶9 The trial court accepted Farmers' position that the Silvers' claims were barred by the equitable doctrine of judicial estoppel and summarily dismissed the Silvers' claims against Farmers. Farmers' position was that the Silvers had failed to properly list their claims as assets of their bankruptcy and therefore could not bring a suit in state court for those claims. We concluded that the claims were mentioned in the bankruptcy papers and reversed that decision and remanded for further proceedings. *Baldwin*, 147 Wn. App. at 537; CP at 418. Meanwhile, Farmers had paid ServiceMaster $700 to settle a claim by ServiceMaster for the amount outstanding for its work.

¶10 On remand Farmers again moved for summary judgment on all of the Silvers' claims, arguing that the Silvers had produced no evidence of damages to support any of them because Farmers had overpaid the total claims made by about $2,700.00. The Silvers responded. Ms. Silver claimed in an affidavit that the Silvers never received the $654.43 check and the $70.00 check Farmers claimed to have sent to pay for their personal expenses. She also claimed that the fire destroyed the deck, that no one repaired it, and that Farmers owed the Silvers $10,000.00 for the removal and replacement of the deck. In reply, Farmers argued that the Silvers' response was insufficient to avoid its summary dismissal because the response amounted to nothing more than conclusory, unsupported statements with no proof of actual damages.

¶11 At the summary judgment hearing, the court asked the Silvers' attorney what proof he had of damages. The attorney responded that damages were not the issue before the court on summary judgment but that regardless the Silvers' deposition testimony was proof of damages. The court ultimately concluded that the Silvers produced no proof of damages to support their claims and entered summary judgment for Farmers. The Silvers moved for reconsideration. They argued that the court did not give their attorney a fair opportunity to present their summary judgment argument. The court denied the motion for reconsideration.

## DISCUSSION

SUMMARY JUDGMENT PROCEEDING

¶12 A trial court has discretion to reasonably control the presentation of a party's argument to secure fair, effective, and efficient proceedings. *Sanders v. State*, 169 Wn.2d 827, 851, 240 P.3d 120 (2010). We review the exercise of that discretion for abuse. *Id.* "A trial court abuses its discretion when its exercise of discretion is manifestly unreasonable or based on untenable grounds." *Palmer v. Jensen*, 81 Wn. App. 148, 151, 913 P.2d 413 (1996).

¶13 The Silvers first contend that summary judgment proceedings were not conducted properly and they therefore did not get a fair hearing. They assert that the trial judge interrupted their attorney multiple times during his argument with questions about damages, did not allow him to fully argue his response to Farmers' motion for summary judgment, and refused to acknowledge Ms. Silver's affidavit as proof of damages. They claim the trial judge did not like their attorney because he got the judge's first order, dismissing this case, reversed on appeal.

¶14 There is nothing unreasonable about the judge here asking the Silvers' attorney to focus on the issue of damages. The Silvers' claims depended on proof of damages.

*Smith v. Safeco Ins. Co.*, 150 Wn.2d 478, 485, 78 P.3d 1274 (2003) (setting forth elements for claim of bad faith insurance practices); *Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*, 105 Wn.2d 778, 780, 719 P.2d 531 (1986) (listing elements of Consumer Protection Act violation); *Nw. Indep. Forest Mfrs. v. Dep't of Labor & Indus.*, 78 Wn. App. 707, 712, 899 P.2d 6 (1995) (reciting elements for breach of contract). And Farmers' motion for summary judgment hinged primarily on the argument that the Silvers produced no evidence of damages to support any of their causes of action because the company paid all of the Silvers' legitimate claims and then some. The judge, then, made efficient and effective use of the hearing by asking the Silvers' attorney to focus on the issue of damages. She had, and considered, the Silvers' 20-page response and more than 50 pages of affidavits and exhibits to help her address any other questions she might have had.

■ ■ ¶15 The trial judge's refusal to consider Ms. Silver's affidavit as proof of damages was also reasonable and proper. What the judge did here was refuse to consider the conclusory, unsupported statements set out in the affidavits. Though the trial court may be lenient to a nonmoving party's affidavits presented in response to a motion for summary judgment, it may not consider conclusory statements contained in the nonmoving party's affidavits. *Pub. Util. Dist. No. 1 of Lewis County v. Wash. Pub. Power Supply Sys.*, 104 Wn.2d 353, 361, 705 P.2d 1195, 713 P.2d 1109 (1985). A nonmoving party cannot defeat a motion for summary judgment with conclusory statements of fact. *Overton v. Consol. Ins. Co.*, 145 Wn.2d 417, 430-31, 38 P.3d 322 (2002).

■ ¶16 In her affidavit, Ms. Silver claimed that the damage to her deck was worth $10,000. But no receipt, quote, or any other piece of evidence supports her statement. The statement, then, is nothing more than an unfounded, conclusory statement of damages. Indeed, the statements, quotes, estimates, and bills all support a modest claim to power wash the deck.

¶17 The judge did interrupt and ask questions. The questions were not only appropriate but focused in on the very issue the judge would have to decide. Without the judge's questions, counsel's argument would have been unfocused and not helpful to the judge and ultimately to us. The court reasonably controlled the presentation of the Silvers' summary judgment argument and successfully secured a fair, effective, and efficient summary judgment hearing.

PRIMA FACIE SHOWING NECESSARY TO AVOID
SUMMARY JUDGMENT

¶18 We review de novo the trial court's order granting Farmers' motion for summary judgment by engaging in the same inquiry as the trial court. *O'Neill v. Farmers Ins. Co. of Wash.*, 124 Wn. App. 516, 522, 125 P.3d 134 (2004). We will affirm the order "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." CR 56(c). "A material fact is one upon which the outcome of the litigation depends." *Vacova Co. v. Farrell*, 62 Wn. App. 386, 395, 814 P.2d 255 (1991).

¶19 We consider " '[t]he facts and all reasonable inferences therefrom . . . in the light most favorable to the nonmoving party.' " *O'Neill*, 124 Wn. App. at 522 (quoting *Nivens v. 7-11 Hoagy's Corner*, 133 Wn.2d 192, 197-98, 943 P.2d 286 (1997)). But the nonmoving party must lay out evidentiary facts that raise genuine issues of material fact to avoid summary dismissal. *Overton*, 145 Wn.2d at 430-31. "[G]enuine issues of material fact cannot be created by a declarant who submits an affidavit that contradicts his or her own deposition testimony." *Selvig v. Caryl*, 97 Wn. App. 220, 225, 983 P.2d 1141 (1999). Genuine issues of material fact also cannot be created by conclusory statements of fact. *Overton*, 145 Wn.2d at 430.

¶20 The Silvers claimed Farmers breached the insurance policy contract, did so in bad faith, and thereby violated the Consumer Protection Act by (1) failing to defend them against B&D Construction; (2) failing to properly pay the contractors' bills; (3) failing to pay for the Silvers' labor costs and additional living expenses or for the repair, removal, and replacement of their deck; and (4) cancelling their policy.

¶21 Breach of contract and bad faith claims depend on proof of four common elements: duty, breach, causation, and damages. *Nw. Indep. Forest Mfrs.*, 78 Wn. App. at 712 (reciting elements for breach of contract); *Smith*, 150 Wn.2d at 485 (setting forth elements for claim of bad faith insurance practices). In addition to these elements, a bad faith claim also depends on proof that the breach complained of was unreasonable, frivolous, and unfounded. *Id.* Similarly, a Consumer Protection Act claim depends on proof of (1) an unfair or deceptive act (2) occurring in trade or commerce, (3) a public interest impact, (4) injury to business or property, and (5) causation. *Hangman Ridge Training Stables*, 105 Wn.2d at 780. To maintain these claims and avoid summary judgment, the Silvers had to produce evidence raising genuine issues of material fact as to each element of each claim. We consider each allegation underlying these claims to see whether the Silvers have met their burden.

¶22 *Allegation 1: Failure To Defend.* Farmers did not defend the Silvers against B&D Construction's lawsuit. The insurance policy states that Farmers had a duty to defend the Silvers "against any covered claim or suit." CP at 147. Farmers says it did not defend the Silvers because the Silvers did not specifically ask it to undertake the defense of the action. Resp't's Br. at 33 (citing *Unigard Ins. Co. v. Leven*, 97 Wn. App. 417, 426-27, 983 P.2d 1155 (1999)).

¶23 The Silvers argue that Farmers should have issued the check payable to both them and B&D Construction. And no doubt Farmers wishes it had done just that.

But there is no public law or contract provision here that requires it to issue the check jointly. Farmers was obligated under the terms of this policy to reimburse the Silvers for those losses covered by the policy and it did that.

¶24 B&D Construction sued the Silvers because the Silvers did not pay it for its work, work that Farmers had already reimbursed the Silvers for. Yet the Silvers contend that Farmers had a duty to defend them. This approach would turn the duty to defend on its head. Farmers is embroiled in this dispute because the Silvers did not use the insurance money paid by Famers to pay the contractors and vendors who repaired their home.

¶25 The duty to defend is triggered by a complaint that alleges facts that, if true, would render the insurer liable to the insured under the policy. *Farmers Ins. Co. of Wash. v. Romas*, 88 Wn. App. 801, 807, 947 P.2d 754 (1997). B&D Construction sued the Silvers for payment for the work it did to repair the fire damage to the Silvers' home. Farmers had a duty to pay *the Silvers* for B&D Construction's services. CP at 146. And it is undisputed that it did so. Farmers issued the Silvers a check for $3,438.17. The Silvers received and cashed that check. And the Silvers had a duty to give B&D Construction a portion of it ($2,727.96). *See* CP at 147 (Section II—Liability; Coverages; Coverage E—Personal Liability).

¶26 The Silvers suggest, nonetheless, that they were relieved of their duty to pay B&D Construction because of the way Farmers issued the check. They say Farmers should have issued the check to them and B&D Construction and should have attached instructions or an itemization to the check. But they cite no authority or provision in their insurance agreement to support this argument. And an estimate that detailed the costs of the repairs that B&D Construction was hired to perform accompanied the check. Farmers is not liable for the Silvers' failure to pay B&D Construction because Farmers did not owe the Silvers a duty to pay B&D Construction again. Thus, B&D Construc-

tion's suit did not allege facts that would render Farmers liable to the Silvers. And it did not therefore trigger Farmers' duty to defend the Silvers. *Farmers Ins.*, 88 Wn. App. at 807.

¶27 Farmers' failure to defend the Silvers neither amounted to a breach of its duty to defend the Silvers against any covered claim or suit nor did it cause the Silvers damages. Farmers, then, is not liable for the attorney fees and costs the Silvers incurred to defend themselves against B&D Construction.

¶28 *Allegation 2: Failure To Properly Pay for Contractors' Work.* The Silvers claim Farmers breached its duty to pay them timely and directly for all covered losses because Farmers paid contractors directly and settled an outstanding bill with ServiceMaster without notifying the Silvers several months after ServiceMaster completed its repair work. We have already touched on this complaint but will elaborate further since it is set out as a separate assignment of error.

¶29 The insurance policy establishes that Farmers had a duty to pay the Silvers for all covered losses within 60 days of an appraisal award or reaching an agreement on a claim:

> We shall adjust all losses with you. We shall pay you unless another payee is named in the policy. We shall pay within 60 days after:
>
> a. we reach agreement with you, or
>
> b. a court judgment, or
>
> c. an appraisal award.

CP at 146. Farmers paid ServiceMaster and Magic Carpet directly for repairs they made to the Silvers' home and it settled with ServiceMaster more than 60 days after sending it a partial payment. We conclude that this is a reasonable course of conduct consistent with the duties Farmers assumed in their agreement. The Silvers had previously failed to pay the contractors when Farmers paid the Silvers directly. And it appears to be undisputed that neither

ServiceMaster nor Magic Carpet has any outstanding claims.

¶30 Moreover, the Silvers have failed to show that Farmers breached any duty it had to them by settling with ServiceMaster. The policy provides that Farmers "may . . . settle any claim . . . that we consider proper." CP at 147 (Section II—Liability; Coverages; Coverage E—Personal Liability). It does not require that Farmers notify the Silvers of any settlement. And, even were we to assume that Farmers breached a duty to the Silvers by settling with ServiceMaster, the Silvers have produced no evidence that the breach caused damages.

¶31 *Allegation 3: Failure To Pay for Temporary Housing, Additional Utilities, Labor, and Deck.* The Silvers also claim that Farmers breached its duty to pay all losses because they did not receive a $654.43 check for labor expenses or a $70.00 check for additional utility expenses and Ms. Silvers' temporary housing expenses. And even if that were true, Farmers' response is again reasonable. The Silvers kept for themselves a $3,438.17 check to which they were not entitled and thereby received a windfall in excess of $2,700.00.

¶32 The Silvers further claim Farmers should have had a duty to investigate the Silvers' concern that the checks Farmers allegedly sent them for their personal expenses were lost or missing. The insurance policy, however, gave Farmers the power, not a duty, to investigate claims it considered proper: "We may investigate and settle any claim or suit that we consider proper." CP at 147 (Section II—Liability; Coverages; Coverage E—Personal Liability). Farmers, then, did not breach any duty owed to the Silvers by failing to investigate the missing checks.

¶33 Finally, the Silvers assert that Farmers owes them $10,000 for the removal and replacement of their deck and for injuries Mr. Silver sustained while removing the deck. First, the policy explicitly excludes Mr. Silver's injuries from coverage:

*First Aid Expenses.* Expenses for necessary first aid to others incurred by an insured at the time of occurrence for bodily injury covered by this policy.

We shall not pay for first aid to you or any other insured.

CP at 147.

We do *not* cover bodily injury: . . . [t]o you or any resident of your household except a residence employee.

CP at 148. Second, the fire caused $135 of damage to the deck and as a result of the fire, the deck needed to be power washed, not removed or replaced. The Silvers removed the deck because their new insurance company would not otherwise insure them. The new insurance company labeled the deck a safety hazard but did not explain why it was a hazard. However, Mr. Silver testified that dry rot had compromised the deck. The Silvers have not shown that the removal of the deck had anything to do with the fire or that their Farmers policy covered dry rot or another insurance company's request that they remove the deck. Even assuming Farmers had a duty to pay for the deck's removal and replacement and breached that duty, the only evidence of damages are the Silvers' interrogatory answers and Ms. Silver's affidavit, which contain conclusory statements of fact again unsupported by receipts, quotes, or any other evidence of the costs of removal and replacement. The Silvers' deck claim, then, fails to present a genuine issue about damages for trial. *Overton*, 145 Wn.2d at 430.

¶34 *Allegation 4: Policy Cancellation.* The Silvers suggest that Farmers breached some duty by cancelling their homeowners' insurance policy for failing to pay their contractors. The policy, however, allows Farmers to cancel the policy for any reason. And cancelling the policy for the Silvers' failure to pay its contractors was reasonable, in any event. There is no evidence Farmers breached any duty relevant to cancelling the policy.

¶35 The Silvers have failed to establish their breach of contract, bad faith, and Consumer Protection Act claims as

a matter of law and failed to raise a genuine issue of material fact as to any one claim. The trial court, then, did not err by granting Farmers' motion for summary judgment. We affirm.

## ATTORNEY FEES

¶36 Attorney fees under *Olympic Steamship Co. v. Centennial Insurance Co.*, 117 Wn.2d 37, 811 P.2d 673 (1991), are available only when the insured prevails. *Hardy v. Pemco Mut. Ins. Co.*, 115 Wn. App. 151, 157, 61 P.3d 380 (2003). The Silvers have not prevailed. We, therefore, deny their request for attorney fees and costs.

KULIK, C.J., and SIDDOWAY, J., concur.