# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
## DIVISION ONE

| | | |
|---|---|---|
| TONYA HEDGES, an individual, | ) | No. 72832-6-I |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| AMERICAN FAMILY INSURANCE, | ) | |
| a corporation, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | FILED: March 16, 2015 |
| | ) | |

2015 MAR 16 AM 9:55
COURT OF APPEALS DIV I
STATE OF WASHINGTON
FILED

VERELLEN, A.C.J. — American Family Insurance appeals the trial court's order granting its insured, Tonya Hedges, summary judgment permitting her to "stack" multiple underinsured motorist (UIM) coverages to a total amount of $200,000. American Family contends the "anti-stacking" clause limits her to the $100,000 in UIM benefits she already recovered under another UIM policy. We agree.

The anti-stacking provision here is unambiguous and precludes Hedges from stacking multiple UIM policies. Because Hedges' UIM coverage with American Family had $100,000 of liability limits, Hedges, the driver, has already received the benefit of her bargain with American Family by recovering $100,000 under the car owner's UIM policy. Accordingly, we reverse the trial court's summary judgment order. Because Hedges is not the prevailing party, we also reverse the award of attorney's fees and costs.

## FACTS

The material facts are undisputed. Hedges was injured in an automobile accident while driving a vehicle owned by her mother. Her injuries exceeded the $250,000 limit she received from Arthur Beagle's (the at-fault driver) insurance company. Since Beagle's policy liability limits were insufficient to compensate Hedges' damages, he was an underinsured motorist.[1] Hedges also recovered $100,000 under her mother's UIM policy.[2]

Hedges then sought $100,000 in UIM coverage from her insurance company, American Family. American Family denied Hedges' claim, relying on an anti-stacking clause that barred her from stacking multiple UIM policies. American Family's UIM endorsement "other insurance" provision includes an anti-stacking clause:

1.    Other Insurance

    . . . .

    b.    Other Liability Coverage From Other Sources

        If there is other similar insurance for a loss covered by this endorsement, we will pay our share according to this policy's proportion of the total of all liability limits. But any insurance provided under this endorsement for an insured person while occupying a vehicle you do not own, including any vehicle while used as a temporary substitute for your insured car, is excess over any other similar insurance.

---

[1] An "underinsured motor vehicle" means "a motor vehicle . . . with respect to which the sum of the limits of liability under all bodily injury or property damage liability bonds and insurance policies applicable to a covered person after an accident is less than the applicable damages which the covered person is legally entitled to recover." RCW 48.22.030(1).

[2] Because Hedges was driving a vehicle that she did not own, her mother's State Farm UIM coverage was the primary UIM coverage and Hedges' American Family policy only provided excess UIM coverage.

2

Any recovery for damages under all such policies or provisions of coverage may equal but not exceed the highest applicable limit for any one vehicle under any insurance providing coverage on either a primary or excess basis.[3]

Hedges sued. Both parties agreed to stipulated facts and filed cross-motions for summary judgment. The trial court granted Hedges' summary judgment motion, determining that the other insurance provision was ambiguous and must be construed in favor of the insured to allow stacking. The trial court concluded that Hedges could stack UIM coverages and recover an additional $100,000 of UIM benefits under her insurance policy.[4] The trial court also awarded Hedges attorney's fees and costs.

American Family appeals.

## ANALYSIS

The parties dispute the interpretation of an UIM endorsement other insurance provision that contains an anti-stacking clause.[5] We must determine whether Hedges can stack UIM coverage from two different UIM policies. The core issue is whether the UIM endorsement anti-stacking clause clearly and unambiguously precludes her from collecting UIM benefits under her insurance policy where the "highest applicable limit" of

---

[3] Clerk's Papers (CP) at 54 (emphasis omitted).

[4] Both parties agree that Hedges' UIM coverage with American Family is limited to $100,000.

[5] Hedges contends American Family's characterization of the applicable clause here as an anti-stacking clause is unwarranted. See Respondent's Br. at 1, 2, 6, 8. We disagree because the clear purpose of that provision is to limit Hedges from "adding together different policy coverages to increase available coverage limits." Nat'l Merit Ins. Co. v. Yost, 101 Wn. App. 236, 241, 3 P.3d 203 (2000); see also THOMAS V. HARRIS, WASHINGTON INSURANCE LAW § 39.01, at 39-3 (3d ed. 2010) ("Antistacking provisions are often contained within a UIM policy's 'other insurance' clause."). Notably, Hedges does not challenge the validity of the anti-stacking clause, and the applicable UIM provision here substantially parallels the UIM statutory language that permits anti-stacking. See RCW 48.22.030(6).

3

UIM coverage has already been paid by her mother's insurer. American Family contends the anti-stacking clause limits her to $100,000 in UIM benefits *from all sources*, and therefore, Hedges should not be able to recover $100,000 under her UIM policy because she already recovered that amount from another policy. We agree.

We review summary judgment orders de novo, performing the same inquiry as the trial court.[6] We review questions of law, such as the interpretation of an insurance policy, de novo.[7] Because the material facts are undisputed, we need only determine whether Hedges was entitled to judgment as a matter of law.[8]

We construe insurance policies as contracts, so policy provisions are "interpreted according to basic contract principles."[9] We consider the policy as a whole, giving it a "'fair, reasonable, and sensible construction as would be given to the contract'" by an average purchaser of insurance.[10] We must enforce policy language that is clear and unambiguous as written and not create an ambiguity where none exists.[11] An ambiguity

---

[6] McDevitt v. Harborview Med. Ctr., 179 Wn.2d 59, 64, 316 P.3d 469 (2013).

[7] Sunnyside Valley Irrigation Dist. v. Dickie, 149 Wn.2d 873, 880, 73 P.3d 369 (2003); State Farm Fire & Cas. Co. v. English Cove Ass'n, Inc., 121 Wn. App. 358, 362-63, 88 P.3d 986 (2004).

[8] CR 56(c); Reliable Credit Ass'n, Inc. v. Progressive Direct Ins. Co., 171 Wn. App. 630, 638, 287 P.3d 698 (2012); ); see also Federated Am. Ins. Co. v. Erickson, 67 Wn. App. 670, 672, 838 P.2d 693 (1992); Doyle v. State Farm Ins. Co., 61 Wn. App. 640, 642, 811 P.2d 968 (1991).

[9] Allemand v. State Farm Ins. Cos., 160 Wn. App. 365, 368, 248 P.3d 111 (2011); see also Quadrant Corp. v. American States Ins. Co., 154 Wn.2d 165, 171, 110 P.3d 733 (2005).

[10] Quadrant Corp., 154 Wn.2d at 171 (internal quotation marks omitted) (quoting Weyerhaeuser Co. v. Commercial Union Ins. Co., 142 Wn.2d 654, 666, 15 P.3d 115 (2000)).

[11] Id.; Gull Indus., Inc. v. State Farm Fire & Cas. Co., 181 Wn. App. 463, 470, 326 P.3d 782 (2014).

exists only when the policy's language on its face is fairly susceptible to two different but reasonable interpretations.[12]

Exclusionary clauses, such as an anti-stacking clause, are strictly construed against the insurer.[13] When two constructions of an exclusionary clause exist, "one favorable to the insured and one favorable to the insurer," we "must adopt the construction favorable to the insured."[14] But a strict application should not trump a policy's plain and clear language such that a strained or forced construction results.[15]

Anti-stacking clauses allow insurers to prohibit insureds from stacking coverage limits among multiple policies.[16] RCW 48.22.030 governs UIM coverage in Washington. The UIM anti-stacking statute provides:

> The policy may provide that if an injured person has *other similar insurance* available to him or her *under other policies*, the total limits of liability of all coverages shall not exceed the higher of the applicable limits of the respective coverages.[17]

In the UIM context, the term "similar insurance" has been understood to mean other UIM coverages.[18] Further, UIM coverage's underlying policy is to provide "a second layer of floating protection, not full compensation."[19]

---

[12] Quadrant Corp., 154 Wn.2d at 171 (quoting Weyerhaeuser Co. v. Commercial Union Ins. Co., 142 Wn.2d 654, 666, 15 P.3d 115 (2000)).

[13] Reliable Credit Ass'n, 171 Wn. App. at 638.

[14] Id. at 639; see also Britton v. Safeco Ins. Co. of Am., 104 Wn.2d 518, 528, 707 P.2d 125 (1985).

[15] Quadrant Corp., 154 Wn.2d at 172.

[16] See Britton, 104 Wn.2d at 531-32; Greengo v. Pub. Emps. Mut. Ins. Co., 135 Wn.2d 799, 806, 959 P.2d 657 (1998) (stating "external stacking" is "the practice of adding together different policy coverages to increase available coverage limits.").

[17] RCW 48.22.030(6) (emphasis added).

[18] Greengo, 135 Wn.2d at 806-07; see also 3 ALAN I. WIDISS & JEFFREY E. THOMAS, UNINSURED AND UNDERINSURED MOTORIST INSURANCE § 40.1, at 373 (3d ed.

The other insurance provision here is an external anti-stacking provision. External anti-stacking provisions prohibit an insured from layering multiple UIM policies upon each other, "giving the insured UIM coverage beyond his or her UIM single policy limits."[20] Hedges seeks to recover under two different UIM policies: her mother's UIM policy and her own UIM policy. The key provision states:

> If there is *other similar insurance for a loss covered by this endorsement*, we will pay our share according to this policy's proportion of the total of all liability limits. But *any insurance provided under this endorsement* for an insured person while occupying a vehicle you do not own, including any vehicle while used as a temporary substitute for your insured car, is excess over any other similar insurance.
>
> Any recovery for damages *under all such policies or provisions of coverage* may equal but not exceed the highest applicable limit for any one vehicle *under any insurance providing coverage on either a primary or excess basis*.[21]

This other insurance provision is found within the UIM endorsement. A "heading is not a grant of coverage," but it does inform the insured generally what subject covers this section of the policy: UIM coverage.[22]

The provision's first subheading—"other insurance"—is instructive. An average purchaser of insurance would reasonably believe that "other insurance" means other UIM insurance because it is found within the UIM endorsement. Our Supreme Court

---

2005) ("The term 'similar insurance' is appropriately understood to be other underinsured motorist coverage.").

[19] Greengo, 135 Wn.2d at 809; Little v. King, 147 Wn. App. 883, 888, 198 P.3d 525 (2008) ("UIM insurance provides a second layer of excess insurance coverage that 'floats' on top of recovery from other sources for the injured party.").

[20] Parker ex. rel. Parker v. United Servs. Auto. Assocs., 97 Wn. App. 528, 529, 984 P.2d 458 (1999); see also Greengo, 135 Wn.2d at 806.

[21] CP at 54 (emphasis added).

[22] Vadheim v.Continental Ins. Co., 107 Wn.2d 836, 841, 734 P.2d 17 (1987).

has understood the term "'similar insurance'" to be "'other underinsured motorist insurance coverages'" in the UIM context.[23] Thus, when the other insurance provision here uses the phrase "other similar insurance for a loss covered by this endorsement," that must refer to other UIM insurance.[24] This is consistent with the trial court's determination that the phrase "'other similar insurance for a loss covered by this [e]ndorsement' limits the insured's ability to obtain coverage from multiple underinsured motorist provisions."[25] Further, Hedges' insurance policy parallels the UIM statutory language by using the term "other similar insurance available . . . under other policies."[26]

Additionally, the last sentence in the first paragraph of the other insurance provision must also refer to UIM insurance. It states that "*any insurance provided under this endorsement* for an insured person while occupying a vehicle you do not own, including any vehicle while used as a temporary substitute for your insured car, is excess over *any other similar insurance*."[27] Only one reasonable interpretation of this sentence exists. The terms "other similar insurance" and "any insurance provided under this endorsement" must mean, consistent with the subheading and the preceding sentence, other UIM insurance because this endorsement specifically addresses UIM coverage.

"Because multiple insurance policies often apply to the same accident, insurance companies insert 'other insurance' clauses into their policies in an effort to limit or

---

[23] Greengo, 135 Wn.2d at 806-07 (quoting 3 ALAN I. WIDISS, UNINSURED AND UNDERINSURED MOTORIST INSURANCE § 40.1, at 238 (2d ed. 1995)).

[24] CP at 54.

[25] CP at 68 (citing Greengo, 135 Wn.2d at 806-07).

[26] RCW 48.22.030(6).

[27] CP at 54 (emphasis added).

extinguish liability so as to prevent a victim's double recovery."[28] Thus, because the UIM coverage provided under Hedges' policy would be "excess" when she was injured while occupying a car she did not own, the UIM coverage Hedges received under her mother's UIM policy was the primary coverage.[29]

The last sentence of the other insurance provision contains the anti-stacking clause. That sentence limits recovery "under all such policies or provisions of coverage" to the "highest applicable limit for any one vehicle under any insurance providing coverage on either a primary or excess basis."[30] This language is unambiguous and only one reasonable interpretation exists. The phrase "all such policies or provisions of coverage" must refer to all UIM policies or provisions of coverage. The plain meaning of "such" is "previously characterized or specified" or "having a quality already or just specified."[31] Thus, "such policies or provisions of coverage" modifies "other similar insurance" in the preceding paragraph, which must mean other UIM insurance.

The highest applicable limit here "under any insurance providing coverage on either a primary or excess basis" is $100,000. Both Hedges' and her mother's UIM

---

[28] Safeco Ins. Co. of Ill. v. Auto Club. Ins. Co., 108 Wn. App. 468, 479, 31 P.3d 52 (2001) (citation omitted).

[29] In situations where UIM coverage is provided for an insured who is an occupant of a vehicle that is not identified as an insured vehicle by the insurance policy, the occupant's UIM coverage generally provides that the UIM coverage shall be excess over any other collectible insurance. In other words, UIM coverage that exists for occupants of that vehicle will be the primary coverage, and the occupant's own UIM insurance will be excess coverage. See 3 WIDISS & THOMAS, UNINSURED AND UNDERINSURED MOTORIST INSURANCE § 40.1, at 374.

[30] CP at 54.

[31] WEBSTER'S THIRD NEW INT'L DICTIONARY 2283 (2002).

policies provide limits of $100,000. Since Hedges has already recovered $100,000 of UIM benefits, American Family is therefore not required to provide UIM coverage. The public policy of UIM coverage is to provide a "second layer of floating protection, not full compensation."[32] The external anti-stacking clause here is consistent with this policy because "the anti-stacking clause applies only after the insured has received a full UIM recovery, thus satisfying the requirement that the insured receive a second layer of protection."[33]

Moreover, Anderson v. American Economy Insurance[34] and Doyle v. State Farm Insurance[35] are instructive here. Anderson interpreted a nearly identical other insurance provision:

> If this policy and any other policy providing similar insurance apply to the same accident, the maximum limit of liability under all the policies shall be the highest applicable limit of liability under any one policy. However, any insurance we provide with respect to a vehicle you do not own shall be excess over any other collectible insurance.[36]

The court determined the other insurance clause in the UIM endorsement "is unambiguous in limiting the underinsured motorist payments to the highest applicable policy amount."[37] Moreover, because a nonowned vehicle was involved, like here, payments made under Anderson's policy would only be "in excess of the recoverable amount under the primary insurance policy."[38] Therefore, because Anderson already

---

[32] Greengo, 135 Wn.2d at 809.

[33] Id. at 810; see also Little, 147 Wn. App. at 888.

[34] 43 Wn. App. 852, 719 P.2d 1345 (1986).

[35] 61 Wn. App. 640, 811 P.2d 968 (1991).

[36] Anderson, 43 Wn. App. at 859.

[37] Id. at 860.

[38] Id.

recovered the "higher underinsured motorist coverage limit under either of the two applicable policies," Anderson could not recover UIM benefits under his own insurance policy.[39]

Further, Doyle interpreted a similar other insurance provision:

> If this policy and any other policy providing underinsured motorist coverage apply to the same loss, the maximum limit of liability under all policies will be the highest limit of liability that applies under any one policy. If other underinsured motorist coverage applies, we'll pay only our fair share of the loss. That share is our proportion of the total underinsured motorist insurance that applies to the loss. But any insurance we provide when you or a covered person use a vehicle you don't own will be excess over any other collectible insurance.[40]

The court determined the other insurance provision established "the maximum limit of UIM liability among multiple policies."[41] The court held that this provision was unambiguous. When an "insured is injured in a nonowned vehicle," like here, the "amount of UIM benefits payable" will "depend on the liability limits of the applicable policies and on the amount that the insured recovers from other policies."[42]

Like in Anderson and Doyle, the anti-stacking provision here establishes the maximum limit of UIM liability among multiple policies. The other insurance clause's remaining provisions govern the order and share of payments to be made by multiple insurers up to the liability limits established by the anti-stacking restriction. These provisions are consistent and unambiguous. Although Doyle analyzed another insurance provision that expressly referenced UIM coverage, the other insurance clause

---

[39] Id.

[40] Doyle, 61 Wn. App. at 642 (emphasis omitted).

[41] Id. at 644.

[42] Id.

10

here, in context, clearly and unambiguously refers to UIM insurance coverage when using phrases such as "other similar insurance," "any insurance provided under this endorsement," "any other similar insurance," "all such policies or provisions of coverage," and "any insurance providing coverage on either a primary or excess basis."

Importantly, because Hedges was injured in a nonowned vehicle, the other insurance clause here clearly states that the amount of UIM benefits payable will depend on the liability limits of the applicable policies and on the amount Hedges recovers from other UIM policies. This type of other insurance clause, which provides that the maximum limit of liability under all the policies shall be the highest applicable limit of liability under any one policy, and then provides that coverage for nonowned vehicles will be excess over other collectible insurance, has repeatedly been held unambiguous.[43] Further, the "highest applicable limit" of UIM coverage here was $100,000. Since Hedges already received that amount from her mother's UIM policy, her UIM endorsement other insurance provision containing the anti-stacking clause bars Hedges from additional recovery under her own UIM policy.

Therefore, Hedges was not entitled to judgment as a matter of law. The trial court erred in determining that American Family must pay Hedges $100,000 in UIM benefits.

---

[43] Hardy v. Pemco Mut. Ins. Co., 115 Wn. App. 151, 155, 61 P.3d 380 (2003); Yost, 101 Wn. App. at 243; Parker, 97 Wn. App. at 533; Erickson, 67 Wn. App. at 671.

Lastly, the trial court awarded Hedges attorney's fees and costs as the prevailing party below.[44] But because she did not prevail here, Hedges is not entitled to attorney's fees and costs.

Accordingly, we reverse the trial court's summary judgment order and its judgment awarding attorney's fees and costs to Hedges and remand to the trial court to grant American Family summary judgment.

WE CONCUR:

_____
Leach, J.

_____
Becker, J.

---

[44] See Olympic S.S. Co. v. Centennial Ins. Co., 117 Wn.2d 37, 811 P.2d 673 (1991).